# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sandra Sloane,               :
          Petitioner        :
                      :
          v.            : No. 1213 C.D. 2014
                      :
Workers' Compensation Appeal  :
Board (Children's Hospital of    :
Philadelphia),             :
          Respondent      :

Children's Hospital of Philadelphia and  :
Risk Enterprise Management, Ltd.,    :
          Petitioners       :
                      :
          v.            : No. 1399 C.D. 2014
                      : Submitted: April 24, 2015
Workers' Compensation Appeal  :
Board (Sloane),          :
          Respondent      :

BEFORE:    HONORABLE DAN PELLEGRINI, President Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge

**OPINION BY**
**SENIOR JUDGE COLINS**              **FILED: October 1, 2015**

       Before this Court are cross-petitions for review filed by Sandra Sloane

(Claimant) and her employer, Children's Hospital of Philadelphia[1] (Employer), of

an order of the Workers' Compensation Appeal Board (Board) that affirmed in part

---

[1] Employer's insurer, Risk Enterprise Management, Ltd. joined in Employer's petition for review.

and reversed in part the decision and order of a Workers' Compensation Judge (WCJ) granting a petition for reinstatement of benefits (Petition) filed by Claimant. Claimant seeks review of the portion of the Board's order that reversed the WCJ's reinstatement of total disability benefits arising from work injuries sustained in 2004 and 2006. Employer seeks review of the Board's order to the extent it upheld the WCJ's determination that Claimant's 2007 right-knee replacement surgery and related treatment were compensable medical expenses related to the 2006 work injury. For the reasons that follow, we affirm the order of the Board.

On April 20, 2004, Claimant injured her right elbow during the course and scope of her employment as a nurse for Employer while moving cervical traction weights for a patient. (WCJ Decision and Order, Finding of Fact (F.F.) ¶5; December 30, 2004 Notice of Compensation Payable (2004 NCP), Reproduced Record (R.R.) at 6a-7a.) Employer accepted the injury and resulting wage-loss disability through a Notice of Compensation Payable (2004 NCP), which described the injury as lateral epicondylitis of the right elbow. (WCJ Decision and Order, F.F. ¶5; 2004 NCP, R.R. at 6a-7a.) Claimant began receiving partial disability benefits pursuant to a series of supplemental agreements entered into by the parties and returned to work in a light-duty position with reduced wages. (WCJ Decision and Order, F.F. ¶¶5, 13.)

Claimant suffered a second work-related injury to her right elbow and right knee on December 3, 2006 while attempting to restrain a patient. (WCJ Decision and Order, F.F. ¶5; December 28, 2006 Notice of Compensation Payable (2006 NCP), R.R. at 8a-9a.) Employer accepted this injury through a medical-only NCP (2006 NCP) that did not recognize compensation for loss of wages. (WCJ Decision and Order, F.F. ¶5; 2006 NCP, R.R. at 8a.) The injury was described in

2

the 2006 NCP as an "exacerbation of right elbow epicondylitis and flare up of preexisting [degenerative joint disease in her] right knee." (2006 NCP, R.R. at 9a.) Following the injury, Claimant returned to light-duty work while continuing to receive partial disability for the 2004 injury until November 16, 2007 when she ceased working in anticipation of right-knee replacement surgery. (WCJ Decision and Order, F.F. ¶6.) The surgery was performed by Dr. Robert Booth in December 2007. (*Id*.) Claimant has not returned to work following this surgery. (*Id*.)

Claimant filed the Petition on May 31, 2011 seeking the reinstatement of total disability benefits as of November 1, 2007. (Petition, R.R. at 1a-3a.) Employer filed an answer to the petition denying Claimant's entitlement to a reinstatement of benefits, and the matter was assigned to a WCJ. (Answer, R.R. at 4a-5a.) Claimant testified by deposition and at a hearing before the WCJ, and Claimant also submitted the deposition of her physician, Thomas J. Mercora, D.O. The evidence presented by Employer included the deposition testimony of Barry Ruht, M.D., who performed an independent medical examination of Claimant on December 22, 2011.

In a May 15, 2012 decision and order, the WCJ granted the Petition, concluding that Claimant was totally disabled as of November 17, 2007 based on both her 2004 and 2006 work injuries. (WCJ Decision and Order, F.F. ¶16, Conclusions of Law (C.L.) ¶¶1-3.) The WCJ further concluded that Employer was liable for payment of medical services provided or prescribed as a result of the 2004 and 2006 work injuries, including the December 2007 right-knee replacement surgery and subsequent treatment provided by Dr. Mercora. (*Id*., F.F. ¶17, C.L. ¶¶7-8.) The WCJ found Claimant credible and found Dr. Mercora more credible

3

than Dr. Ruht on the basis that Dr. Mercora was Claimant's treating physician. (*Id*., F.F. ¶¶13-14.)

Employer appealed the WCJ's decision and order and the Board affirmed in part and reversed in part. The Board reversed the portion of the WCJ's order that had granted total disability benefits based on the 2006 work injury, concluding that Claimant was required to comply with the three-year limitations period of Section 413(a) of the Workers' Compensation Act (Act)[2] for modification of an NCP rather than the 500-week period for reinstatement of suspended partial disability benefits. (Board Op. at 2-4, 7-9.) As Claimant did not file the Petition within three years of the issuance of the 2006 NCP, the Board determined that Claimant was barred from receiving total disability benefits for the 2006 injury. (*Id*. at 8-9.) The Board concluded that the Petition was timely filed with respect to the 2004 work injury because Claimant continued receiving partial disability payments through the date of filing of the Petition; the Board, however, reversed the WCJ's award of total disability benefits for the 2004 injury, concluding that the credible medical evidence of Claimant's own witness, Dr. Mercora, rebutted Claimant's testimony that she was totally disabled as a result of the 2004 injury and instead showed that the disability was a result of the 2006 injury. (*Id*. at 9-10 & n.6.) The Board also affirmed the WCJ's order to the extent it found Employer liable for Claimant's 2007 right-knee replacement surgery and Dr. Mercora's treatment related to the 2006 work injury, holding that Dr. Mercora's testimony provided substantial evidence for this determination and that the WCJ did not err in crediting him though he did not begin treating Claimant until July 2011. (*Id*. at 10-11.)

---

[2] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 771, 772.

Claimant and Employer each petitioned this Court for review of the Board's order.[3] Claimant argues on appeal that the Board erred in holding that her request for disability benefits for the 2006 injury was barred by the three-year limitations period of Section 413(a) and that the issuance of the medical-only 2006 NCP put her disability in suspended status which could be reinstated within 500 weeks of the 2006 NCP. Claimant further argues that the Board erroneously reversed the WCJ's determination that Claimant was rendered totally disabled on November 17, 2007 as a result of her 2004 work injury to her right elbow, upsetting the WCJ's credibility determinations. In its appeal, Employer challenges the Board's determination that Employer was liable for Claimant's 2007 right-knee replacement surgery and other medical expenses relating to the 2006 injury, arguing that Dr. Mercora's testimony was not sufficient to support this conclusion and that the Board erred in crediting him as her treating physician.

We first address whether the Petition was timely filed with respect to the request for total disability benefits based on the 2006 work injury. Section 413(a) of the Act provides a WCJ with broad discretion to amend an award of benefits, an NCP or an agreement of the parties. 77 P.S. §§ 771, 772, 773. Under the first paragraph of Section 413(a), the WCJ may "review and modify or set aside" an NCP, agreement or award that "was in any material respect incorrect." 77 P.S. § 771. Pursuant to the second paragraph of Section 413(a), the WCJ may "modify, reinstate, suspend, or terminate" an NCP, agreement or award "upon

---

[3] Our review of an appeal from a determination by the Board is limited to determining whether an error of law was committed, whether the WCJ's necessary findings of fact are supported by substantial evidence or whether constitutional rights were violated. 2 Pa. C.S. § 704; *Dougherty v. Workers' Compensation Appeal Board (QVC, Inc.)*, 102 A.3d 591, 594 n.4 (Pa. Cmwlth. 2014).

proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased." 77 P.S. § 772.

All review, modification or reinstatement petitions under Section 413(a) must be filed "within three years after the date of the most recent payment of compensation made prior to the filing of such petition."[4] 77 P.S. § 772; *Fitzgibbons v. Workers' Compensation Appeal Board (City of Philadelphia)*, 999 A.2d 659, 663-64 (Pa. Cmwlth. 2010) (*en banc*). In addition, Section 413(a) provides that

> where compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury that payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable, unless it be shown that the loss in earnings does not result from the disability due to the injury.

77 P.S. § 772. As our Supreme Court has explained, this provision acts as a statute of repose, cutting off any entitlement to the reinstatement of disability benefits that have been partially or totally suspended at the expiration of the 500 weeks under which partial disability benefits are payable pursuant to Section 306(b)(1) of the Act, 77 P.S. § 512(1). *Cozzone v. Workers' Compensation Appeal Board (PA Municipal/East Goshen Township)*, 73 A.3d 526, 535-36 (Pa. 2013). Furthermore, the 500-week and three-year limitations periods of Section 413(a) must be construed together and both be given effect, allowing a claimant whose benefits were suspended or reduced prior to the expiration of the 500-week period to seek reinstatement of total disability payments within three years of the last payment of

---

[4] Petitions by an employer to suspend or terminate benefits are not subject to the three-year limitations period of Section 413(a). *Fitzgibbons v. Workers' Compensation Appeal Board (City of Philadelphia)*, 999 A.2d 659, 664 n.6 (Pa. Cmwlth. 2010) (*en banc*).

6

benefits or the maximum 500 weeks allowed for partial disability, whichever is later. *Id*. at 535-40.

Claimant argues that the 2006 NCP has the same effect as the prior practice before the Board of granting a claim petition with the immediate suspension of disability benefits in cases where medical treatment is required but there is no immediate wage loss. *See, e.g., Ruth Family Medical Center v. Workers' Compensation Appeal Board (Steinhouse)*, 718 A.2d 397, 403 (Pa. Cmwlth. 1998) (recognizing that the Board acted properly in granting a claim petition and immediately suspending benefits where the injury had not manifested itself in a loss of earning power); *Shaffer v. Workmen's Compensation Appeal Board (Hollenback Township)*, 621 A.2d 1125, 1129 (Pa. Cmwlth. 1993) (same). Therefore, Claimant contends that the appropriate form to seek disability benefits for the 2006 injury was by filing a petition to reinstate her suspended benefits and her Petition was timely filed within the 500-week period in which an injured employee is eligible to receive partial disability benefits.

However, as the Board explained in its opinion, the effect of issuing a medical-only NCP is distinct from the effect of a WCJ ruling that a claimant has suffered a loss of earning power and granting a claim petition but immediately suspending benefits. As this Court has explained, the Board created the medical-only option for NCPs in 2004 to allow an employer to accept liability for an injury but not any loss of earning power. *City of Philadelphia v. Workers' Compensation Appeal Board (Butler)*, 24 A.3d 1120, 1124 (Pa. Cmwlth. 2011) (*en banc*); *Forbes Road CTC v. Workers' Compensation Appeal Board (Consla),* 999 A.2d 627, 629 (Pa. Cmwlth. 2010); *Armstrong v. Workers' Compensation Appeal Board (Haines & Kibblehouse, Inc.)*, 931 A.2d 827, 831 & n.5 (Pa. Cmwlth. 2007). This

7

understanding of the effect of a medical-only NCP is evident in this case where Employer checked the portion of the NCP form which states "[c]heck only if compensation for medical treatment **(medical only, no loss of wages)** will be paid subject to the Workers' Compensation Act" and did not complete the portions of the form related to wage-loss benefits, including the weekly compensation rate. (2006 NCP, R.R. at 8a (emphasis in original).) Accordingly, because no disability had ever been recognized by Employer or established by a WCJ for the 2006 injury, disability had not been suspended when the 2006 NCP was issued. Claimant therefore could not seek to have disability benefits reinstated, and the 500-week period for reinstatement of benefits does not govern this case.

Having resolved that the 500-week period was inapplicable to the Petition, we must determine whether the Board correctly held that the Petition was untimely to the extent it sought disability benefits for the 2006 injury. At the outset, we observe that it appears that no appellate court has determined what limitations period applies to a petition that seeks to establish disability compensation for an injury that was previously recognized by the Employer through a medical-only NCP. The Board determined that to the extent the Petition sought disability benefits for the 2006 injury, it was properly viewed as a review petition under Section 413(a) rather than a claim petition under Section 315 of the Act, 77 P.S. § 602,[5] because the underlying injury had already been established and Employer's liability had already ripened, citing our opinion in *Penn Beverage Distributing Co. v. Workers' Compensation Appeal Board (Rebich),* 901 A.2d

---

[5] Section 315 provides that "all claims for compensation shall be forever barred, unless, within three years after the injury, the parties shall have agreed upon the compensation payable...or unless within three years after the injury, one of the parties shall have filed a [claim] petition...." 77 P.S. § 602.

8

1097 (Pa. Cmwlth. 2006) (*en banc*). (Board Op. at 8 n.4.) However, *Penn Beverage* and the cases on which it relies found Section 413(a) applicable where the injured employee sought to *add* an injury that arose as a direct result of a previously recognized injury.[6] Here, by contrast, Claimant seeks wage-loss benefits for an injury which has been recognized as being work-related and medically compensable, but as to which disability liability has not been established.[7]

Despite the apparent ambiguity relating to the proper form of the Petition, we need not resolve this issue because Claimant's request for disability benefits for the 2006 injury would be untimely under the limitations periods of

---

[6] *Penn Beverage*, 901 A.2d at 1102 (concluding that the claimant's specific loss petition for facial disfigurement arose from a previously established automobile accident work injury and therefore should be analyzed pursuant to Section 413(a)); *see also Westinghouse Electric Corp./CBS v. Workers' Compensation Appeal Board (Korach)*, 883 A.2d 579, 587-92 (Pa. 2005) (holding that a petition seeking to add a psychiatric condition to a previously accepted back injury from over ten years prior was governed by the limitations period of Section 413(a) because the later injury "arose as a direct result of" the earlier injury); *Guthrie v. Workers' Compensation Appeal Board (Keystone Coal Co.),* 767 A.2d 634, 636-37 (Pa. Cmwlth. 2001) (concluding that Section 413(a) was applicable to a claim seeking benefits for a permanent scar related to a previously recognized facial injury because the case had a "history" of litigation).

[7] Furthermore, it is not clear that a review petition here would be in accordance with the text of Section 413(a). A review petition is appropriate under the first paragraph of Section 413(a) where an NCP is "in any material respect incorrect" and under the second paragraph of Section 413(a) where "the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased." 77 P.S. §§ 771, 772; *see also Cinram Manufacturing, Inc. v. Workers' Compensation Appeal Board (Hill)*, 975 A.2d 577, 580-81 (Pa. 2009) (explaining that petitions under the first paragraph of Section 413(a) deal with "[c]orrective amendments" that address "an inaccuracy in the identification of an existing injury," while petitions under the second paragraph deal with amendments "addressing subsequently-arising medical or psychiatric conditions related to the original injury (or consequential conditions)"). Claimant has not alleged an inaccuracy in the medical-only NCP for the 2006 injury or an increase or recurrence of her disability; instead, Claimant now seeks an award of disability benefits that had not previously been recognized.

Section 413(a) or Section 315. Under Section 413(a), a reinstatement petition must be filed "within three years after the date of the most recent payment of compensation made prior to the filing of such petition." 77 P.S. § 772. The payment of medical benefits by an employer does not constitute "compensation" for the purposes of Section 413(a) that would act to toll the liability period. *Westinghouse Electric Corp./CBS v. Workers' Compensation Appeal Board (Korach)*, 883 A.2d 579, 591 (Pa. 2005); *Riggle v. Workers' Compensation Appeal Board (Precision Marshall Steel Co.)*, 890 A.2d 50, 56 (Pa. Cmwlth. 2006); *O'Brien v. Workers' Compensation Appeal Board (Montefiore Hospital)*, 690 A.2d 1262, 1264-65 (Pa. Cmwlth. 1997). Since no disability compensation had been paid for the 2006 injury, Claimant was required to establish an entitlement within 3 years of the date of the injury. The Petition filed on December 31, 2011 was therefore untimely under Section 413(a).

Section 315 also imposes a three-year limitations period, measured from the date of injury. 77 P.S. § 602. Unlike Section 413(a), payments of medical expenses may toll the Section 315 limitations period where those payments were made "in lieu of" workers' compensation benefits. *Korach*, 883 A.2d at 591; *Schreffler v. Workers' Compensation Appeal Board (Kocher Coal Co.)*, 788 A.2d 963, 971 (Pa. 2002) (plurality opinion); *Harley Davidson, Inc. v. Workers' Compensation Appeal Board (Emig)*, 829 A.2d 1247, 1252 (Pa. Cmwlth. 2003). The controlling question in this analysis is the intent of the employer, i.e. whether the employer intended the payments for medical services to replace disability benefits. *Schreffler*, 788 A.2d at 969-70; *Harley Davidson,* 829 A.2d at 1252-53; *Golley v. Workers' Compensation Appeal Board (AAA Mid-Atlantic, Inc.)*, 747 A.2d 1253, 1256 (Pa. Cmwlth. 2000). Here, by issuing the medical-only

10

NCP, Employer made its intent expressly clear that it would pay Claimant's medical expenses but accepted no liability for wage-loss benefits. Thus, the Petition would also be untimely under Section 315.

Next, we address whether the Board erred in reversing the WCJ's award of total disability benefits to Claimant based on the 2004 right elbow injury. Claimant argues that her testimony that she stopped working in November 2007 both because of her right knee and right elbow injuries was sufficient to meet her burden for a reinstatement of total disability benefits without any medical evidence, and that by reversing the WCJ the Board improperly disturbed the WCJ's determination that Claimant was credible. Employer argues that the Board appropriately reversed the WCJ because her own expert, Dr. Mercora, who was also found credible by the WCJ, attributed her total disability to her 2006 right knee injury. In addition, Employer argues that the WCJ erred in awarding total disability benefits based on the 2004 injury because the issue of disability benefits was not included in the Petition and the parties expressly agreed that the matter before the WCJ was confined to the 2006 injury.

We agree with Employer's argument that a reinstatement for disability benefits was not properly before the WCJ and affirm on this basis.[8] In rejecting Employer's argument that the 2004 injury was not at issue in the current proceedings, the Board determined that, though the Petition was initially based only upon the 2006 injury, Claimant's counsel expanded the Petition to include the 2004 injury at Claimant's deposition on August 31, 2011 and Employer's counsel

---

[8] This Court may affirm on grounds other than those relied on below where other grounds for affirmance exist. *Johnson v. Workers' Compensation Appeal Board (Sealy Components Group)*, 982 A.2d 1253, 1260 n.12 (Pa. Cmwlth. 2009); *Wolf v. Workers' Compensation Appeal Board (County of Berks/Office of Aging),* 705 A.2d 483, 483 n.1 (Pa. Cmwlth. 1997).

11

acknowledged the multiple theories for reinstatement.[9]  (Board Op. at 1-2.)  The Board's analysis, however, ignores that during the deposition of Employer's medical expert, Dr. Ruht, on February 2, 2012 the parties stipulated that Claimant's 2004 right elbow injury was *not* at issue in the current proceedings:

> [Employer's counsel:]  I do want you to focus your medical opinions on the claimant's right knee.  Prior to your deposition today we had an off-the-record discussion between Counsel, and in light of the medical opinions rendered by Dr. Mercora during his deposition it's been agreed between the parties that the issue pertinent to the review petition currently pending before [the WCJ] is whether or not the claimant's right knee replacement was necessitated by her work-related injury of 2006.
>
> ...And, Counsel, if you could just please state for the record whether I accurately represented our stipulation prior to the dep?
>
> [Claimant's counsel:]  Yes, you did.

(Deposition of Dr. Ruht at 14-15, R.R. at 117a-118a.)  Importantly, this stipulation excluding the 2004 injury occurred after the statement by Claimant's counsel during Claimant's deposition, which the Board had held expanded the issues in the Petition.  Furthermore, in accordance with the parties' understanding that only the 2006 right knee injury was at issue, Employer did not elicit testimony from Dr. Ruht concerning Claimant's 2004 injury and whether that contributed to Claimant's total disability.

---

[9] Claimant's counsel stated:  "We're also trying a reinstatement on an injury that occurred in '04, which is to her right elbow as well that's recognized....[s]o there's multiple theories for reinstatement."  (Deposition of Claimant at 29-30, R.R. at 65a-66a.)  Employer's counsel then stated:  "All right.  Then, like you said, I'll just ask the questions and we can argue it later."  (*Id.* at 30, R.R. at 66a.)

We recognize, as the Board did, that liberal pleading rules apply in workers' compensation matters. *Krushauskas v. Workers' Compensation Appeal Board (General Motors)*, 56 A.3d 64, 69 (Pa. Cmwlth. 2012) (*en banc*); *Brehm v. Workers' Compensation Appeal Board (Hygienic Sanitation Co.)*, 782 A.2d 1077, 1081-82 (Pa. Cmwlth. 2001) (*en banc*). Nevertheless, principles of fairness and due process require that the party against whom relief is awarded must have been on notice of the theory of relief and had an opportunity to respond. *Krushauskas*, 56 A.3d at 69; *Brehm*, 782 A.2d at 1081-82 & n.16. Thus, where the parties expressly stipulated that the 2004 injury was excluded from the current proceedings and Employer relied on that agreement to not present medical evidence related to that injury, the WCJ acted outside his authority by ordering benefits related to the 2004 injury.

Employer also appeals from the Board's order affirming the WCJ's determination that Employer was responsible to pay Claimant's medical expenses related to the December 3, 2006 knee injury, including Claimant's right-knee replacement surgery.[10] Employer specifically challenges the competency of Dr. Mercora, Claimant's medical expert, arguing that the WCJ erred in crediting Dr. Mercora as Claimant's treating physician because Dr. Mercora was hired only for litigation purposes and he did not have personal knowledge of Claimant's treatment.

---

[10] We note that the WCJ determined that Employer was liable for payment for all medical services in connection with both the 2004 and 2006 injuries; the Board affirmed the WCJ to the extent the WCJ required Employer to reimburse Claimant for medical expenses but did not address Employer's responsibility for medical expenses related to the 2004 injury in its opinion. (WCJ Decision and Order, F.F. ¶17, C.L. ¶¶7-8, Order; Board Op. at 10-11, Order.) Because Employer only appealed from the decision that the right-knee replacement surgery and other treatment related to the 2006 injury were medically compensable, we need not address whether Employer is responsible for payments related to the 2004 injury.

13

Dr. Mercora testified that he first examined Claimant on July 6, 2011, at which time he took Claimant's history and performed a physical examination of Claimant. (Deposition of Dr. Mercora (Mercora Dep.) at 12-18, R.R. at 94a-96a.) Based on the physical examination, the history elicited from Claimant and a review of Claimant's medical records, including the records of Dr. Booth who performed the right knee replacement surgery, Dr. Mercora diagnosed Claimant with an aggravation of a degenerative joint disease in the right knee. (*Id*. at 18-19, 25-26, R.R. at 96a-98a.) Dr. Mercora opined that, though Dr. Booth's records do not reflect the December 3, 2006 work injury, the right knee surgery was related to that injury. (*Id*. at 19-24, 39-41, R.R. at 96a-97a, 101a.) Dr. Mercora reasoned that, while Claimant had complaints related to her right knee as far back as 2000 and received treatment on her right knee beginning in November 2005, her left knee was the focus of treatment prior to the December 3, 2006 work injury. (*Id*. at 19-21, 40, R.R. at 96a, 101a.) Dr. Mercora testified that the injections for her knee appeared to be working until a July 2007 visit at which Dr. Booth observed tenderness and effusion in Claimant's right knee and recommended right knee replacement surgery for the first time. (*Id*. at 20-21, 41, R.R. at 96a, 101a.) This indicated to Dr. Mercora that something had happened between Claimant's September 2006 and July 2007 visits to Dr. Booth to cause a worsening of the condition of the right knee, which Dr. Mercora concluded was the December 3, 2006 work injury. (*Id*. at 21, 40-41, R.R. at 96a, 101a.)

The WCJ found that Dr. Mercora's testimony was credible and entitled to greater weight than the testimony of Employer's medical expert, Dr. Ruht, which the WCJ rejected to the extent inconsistent with the testimony of Dr. Mercora. (WCJ Decision and Order, F.F. ¶14.) In finding Dr. Mercora's opinion

14

was entitled to greater weight than that of Dr. Ruht, the WCJ relied on the fact that Dr. Mercora was Claimant's treating physician while Dr. Ruht performed a one-time evaluation for litigation purposes. (*Id.*) The WCJ further found that Dr. Mercora's diagnosis of Claimant was supported by his training and expertise as a physician, his observation of Claimant over time, his review of her medical records, his reliance on Claimant's credible history and his understanding of Claimant's job duties as a registered nurse. (*Id.*)

Upon review of the record, we conclude that the WCJ's determination that Dr. Mercora credibly supported Employer's liability for medical expenses related to the 2006 right-knee injury was not in error. Employer contends that Dr. Mercora's testimony was not competent because Dr. Mercora did not examine Claimant in July 2011 and based his diagnosis and opinion on causation on the notes of Dr. Booth and Claimant's other doctors. However, an expert may base his opinion in part on the notes of others on which he customarily relies in his professional practice. *Westinghouse Electric Corp./CBS v. Workers' Compensation Appeal Board (Burger)*, 838 A.2d 831, 838 (Pa. Cmwlth. 2003); *Empire Steel Castings, Inc. v. Workers' Compensation Appeal Board (Cruceta)*, 749 A.2d 1021, 1026 (Pa. Cmwlth. 2000). To the extent Employer seeks to have us second guess Dr. Mercora because he did not treat Claimant at the time of her right knee replacement surgery, Employer's arguments must be rejected because they go to the weight and credibility of the evidence rather than Dr. Mercora's competency. *Burger*, 838 A.2d at 838. The WCJ has exclusive province over questions of credibility and evidentiary weight, including whether to accept or reject the testimony of any witness, including a medical witness, in whole or in part. *University of Pennsylvania v. Workers' Compensation Appeal Board (Hicks)*,

15

16 A.3d 1225, 1229 n.8 (Pa. Cmwlth. 2011); *Anderson v. Workers' Compensation Appeal Board (Penn Center for Rehab)*, 15 A.3d 944, 949 (Pa. Cmwlth. 2010). As an appellate court we may not reweigh the evidence or review the credibility of witnesses, but rather our role is confined to determining whether the WCJ's findings are supported by substantial evidence. *Sell v. Workers' Compensation Appeal Board (LNP Engineering),* 771 A.2d 1246, 1250-51 (Pa. 2001).

Employer also argues that the WCJ erred by affording Dr. Mercora greater deference than Employer's expert, Dr. Ruht, as Claimant's treating physician when Dr. Mercora first saw her in connection with this litigation and he admitted that he was only "monitoring" Claimant's condition. (Mercora Dep. at 27, R.R. at 98a.) It is well established that "greater credence may be given to the testimony of a treating physician than to a physician who examines simply to testify for litigation purposes." *School District of Philadelphia v. Workers' Compensation Appeal Board (Hilton)*, 84 A.3d 372, 375 (Pa. Cmwlth. 2014) *aff'd,* 117 A.3d 232 (Pa. 2015) (quoting *D.P. "Herk" Zimmerman, Jr., Inc. v. Workmen's Compensation Appeal Board (Himes),* 519 A.2d 1077, 1080 (Pa. Cmwlth. 1987)). Here, while Claimant was first referred to Dr. Mercora by Claimant's counsel, Dr. Mercora testified that he had seen Claimant once a month since the initial visit with the intention of eventually scheduling to see her every six months and that Claimant had requested he become her primary care physician. (Mercora Dep. at 26-29, 33, R.R. at 98a-99a.) Furthermore, while Dr. Mercora testified that he was only "monitoring" Claimant's right knee and right elbow conditions at the moment, he also testified that he had recommended to Claimant that she continue seeking treatment for those conditions with her other doctors, provided treatment related to her lower back, and had discussed potential future treatment for her right

16

knee and elbow including the use of medication and possible surgery. (*Id.* at 26-31, R.R. at 98a-99a.) Thus, there was substantial evidence to support the finding that Dr. Mercora had assumed a greater responsibility in Claimant's medical care than simply as a litigation expert and, as Claimant's treating physician, was entitled to greater deference.

Finally, Employer argues that Dr. Mercora's testimony was not competent because his opinion was in conflict with the notes of Dr. Booth and his associates who had previously provided treatment to Claimant's for her knees. Employer cites specifically Dr. Booth's failure to reference any trauma to Claimant's knee in his notes for her first appointment after the December 3, 2006 incident, a pre-2006 note indicating that at some point in the future Claimant might need right knee replacement surgery and notes indicating that Claimant had some pain in her right knee as far back as 2001. (*Id.* at 19, 22, 39-40, R.R. at 96a, 97a, 101a.) However, Dr. Mercora did not deny that Claimant had degenerative joint disease and pain in her right knee prior to 2006, but instead stated that her left knee was the predominant issue prior to the 2006 work injury and she had responded well to the injections in her right knee that she began receiving in November 2005. (*Id.* at 19-21, 40-41, R.R. at 96a, 101a.) Dr. Mercora further testified that it was only in July 2007 that Claimant presented to Dr. Booth with persistent right knee pain which indicated that she had suffered an injury to her right knee in the December 3, 2006 work incident. (*Id.* at 21, 40-41, R.R. at 96a, 101a.) Dr. Mercora's testimony was thus not inconsistent with the notes of Dr. Booth. Moreover, even if we were to accept Employer's arguments that the testimony of Dr. Mercora is inconsistent with the notes of Claimant's other doctors, the WCJ's determination to accept Dr. Mercora's opinion on the causation of Claimant's

17

injury is within the WCJ's role as sole arbiter of evidentiary weight and credibility and subject to our review.

Accordingly, we conclude that the Board did not err in determining that Claimant's medical treatment for the 2006 work injury was compensable under the Act but was not entitled to an award of total disability benefits for the 2004 or 2006 work injuries. The order of the Board is affirmed.

_____
JAMES GARDNER COLINS, Senior Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Sandra Sloane, | : |
| Petitioner | : |
| | : |
| v. | : No. 1213 C.D. 2014 |
| | : |
| Workers' Compensation Appeal | : |
| Board (Children's Hospital of | : |
| Philadelphia), | : |
| Respondent | : |
| | |
| Children's Hospital of Philadelphia and | : |
| Risk Enterprise Management, Ltd., | : |
| Petitioners | : |
| | : |
| v. | : No. 1399 C.D. 2014 |
| | : |
| Workers' Compensation Appeal | : |
| Board (Sloane), | : |
| Respondent | : |

## **O R D E R**

AND NOW, this 1st day of October, 2015, the order of the Workers' Compensation Appeal Board in the above matters is affirmed.

_____
JAMES GARDNER COLINS, Senior Judge