IN THE COMMONWEALTH COURT OF PENNSYLVANIA

UnitedHealthcare of Pennsylvania, Inc.,    :
    :
    Petitioner    :
    :
    v.    : No. 245 C.D. 2021
    : Argued: February 7, 2022
Department of Human Services    :
(Office of Open Records),    :
    :
    Respondent    :


BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK              FILED: December 15, 2022


In this appeal, UnitedHealthcare of Pennsylvania (United) petitions for review of the Final Determination of the Office of Open Records (OOR) denying its appeal of its request for records from the Pennsylvania Department of Human Services (DHS) under the provisions of the Right-to-Know Law (RTKL).[1] After careful review, we affirm.


**I.**

In order to understand the claims raised in the instant appeal, a brief recounting of a number of related cases is necessary. This Court has recently noted:

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

[The HealthChoices Medicaid (HealthChoices) Program] is Pennsylvania's mandatory managed care program for physical health services to Medicaid participants. Managed care providers (MCOs) administer the HealthChoices Program in five Pennsylvania zones - Northeast, Southeast, Lehigh-Capital, Northwest, and Southwest. [DHS] contracts with multiple MCOs to administer HealthChoices Program benefits and services in each zone. United is one of those MCOs.

* * *

In September 2015, [DHS] issued Request for Proposals (RFP) 06-15 for new contracts for administration of the HealthChoices Program in all five zones. United submitted a proposal for all five zones. However, [DHS] did not select United to negotiate for new contracts.

United claim[ed that DHS] stated that in evaluating applications under RFP 06-15, it applied what it called a "heritage factor" in evaluating the proposals by all applicants. *See Aetna Better Health of P[ennsylvani]a, Inc. v. Dep[artmen]t of Hum[an] Serv[ice]s* (Pa. Cmwlth., No. 351 M.D. 2016, filed July 19, 2016), slip op. at 4-5[.] [DHS] applied the heritage factor to favor any existing contractor MCO having at least a 25% market share of Medicaid participants, reasoning that the disruption likely to arise from cessation of such an applicant's services would outweigh some shortfall in the rest of the applicant's evaluation scores. *Id.* However, [DHS] did not disclose in the RFP that it would be applying the heritage factor as part of its evaluation process.

Another applicant, Aetna Better Health of Pennsylvania, Inc. (Aetna), filed a bid protest alleging the heritage factor was a secret criterion used to deprive Aetna of new contracts and to favor other MCOs despite Aetna's higher proposal scores. [DHS] responded by asserting that Aetna could not protest based on that issue. Aetna then filed a petition for review. This Court enjoined the RFP 06-15 procurement and ordered that if [DHS] chose to review Aetna's bid protest, that review should be by an

2

independent hearing officer not employed by [DHS] and not connected to the RFP. *See Aetna Better Health*, slip op. at 32.

[DHS] then withdrew RFP 06-15 and reissued it as RFP 06-15 (Reissued). United again submitted a proposal. Whether [DHS] applied the heritage factor again is unclear. However, United and other applicants filed bid protests to RFP 06-15 (Reissued), claiming that [DHS] had again applied the heritage factor in a manner designed to favor the MCOs that previously received contracts with [DHS], and that [DHS] had secret discussions with another MCO about modifying its bid proposal in order to pass [DHS's] readiness review procedure. [DHS] denied the bid protests. This Court reversed [DHS], concluding that discussions with MCOs about bid modifications and readiness review violated the RFP and the Commonwealth Procurement Code (Procurement Code)[2] because only [DHS's] designated Issuing Officer, Karen Kern [(Kern)], may engage in such discussions. *See UnitedHealthcare of P[ennsylvani]a, Inc. v. Dep[artmen]t of Human Serv[ice]s* (Pa. Cmwlth., No. 790 C.D. 2017, filed Apr[il] 10, 2018), slip op. at 27[.]

\* \* \*

In October 2019, [DHS] issued [Request for Applications 07-19 (RFA)] pursuant to the Procurement Code seeking applications for new contracts to administer the HealthChoices Program. United submitted an application for all five zones. In July 2020, [DHS] notified United that it had selected United for negotiations only in the Southeast zone. United requested a debriefing as provided under the RFA and the Commonwealth's Procurement Handbook.

United filed a series of bid protests, which were later consolidated. On February 17, 2021, the [Secretary of Human Services (Secretary)] issued the Final Determination denying United's bid protests. United filed

---

[2] 62 Pa. C.S. §§101-2311.

3

> a petition for review in this Court. Several competing applicants under the RFA [] intervened in th[e] matter.

*UnitedHealthcare of Pennsylvania, Inc. v. Department of Human Services* (Pa. Cmwlth., No. 165 C.D. 2021, filed November 17, 2021), slip op. at 2-4 (footnotes omitted). Ultimately, this Court affirmed the Secretary's Final Determination denying United's bid protests under the RFA and the Procurement Code. *Id.*

## II.

With respect to the instant appeal, on September 18, 2020, United filed a request with DHS under the RTKL (Second Request)[3] seeking the following relevant documents: (1) communications with any applicant related to the RFA; (2) any documents or communications related to the readiness-review process described in the RFA; (3) any documents or communications related to DHS's decision to extend the incumbent HealthChoices Program for up to two years; (4) any documents or communications, both internal and external, related to debriefing requests by any RFA applicant; (5) any documents or communications, both internal and external, related to Contractor Partnership Program (CPP) submittals under the RFA, including copies of each applicants' CPP submittal and any review or assessment of such submittals by DHS; (6) any documents or communications between DHS and any corporate reference for an applicant under the RFA; and (7) any documents produced by DHS since July 2, 2020, in response to a RTKL request

---

[3] United had submitted a prior request with DHS under the RTKL (First Request). United's appeal with respect to the proceedings involving the First Request is docketed in this Court at No. 1117 C.D. 2020. *See UnitedHealthcare of Pennsylvania, Inc. v. Pennsylvania Department of Human Services (Office of Open Records)* (Pa. Cmwlth., No. 1117 C.D. 2020, filed December 15, 2022). The instant appeal and that appeal were not consolidated, but were argued seriately before this Court.

by any organization that also submitted an application in response to the RFA. *See* OOR Docket No. 2020-2750 Exhibit 1 at Exhibit A.

On November 2, 2020, DHS responded to the Second Request. For Item 1, DHS granted the request in part and denied it in part. DHS provided copies of communications with any applicant since July 2, 2020, but redacted proposal and evaluation information that is exempt under Section 708(b)(26) of the RTKL, and personal identification information that is exempt under Section 708(b)(6)(i)(A). OOR Docket No. 2020-2750 Exhibit 1 at 16-17.

With respect to Item 2, DHS noted that the readiness-review process had not yet begun because of pending procurement protests, but it would provide responsive records with redacted personal identification information under Section 708(b)(6)(i)(A); redacted predecisional deliberations that are exempt under Section 708(b)(10)(i)(A); redacted information subject to the attorney-client privilege that is excluded from the definition of a "public record" under Section 102 of the RTKL; and information that is excluded under the attorney work-product doctrine.[4] OOR Docket No. 2020-2750 Exhibit 1 at 17.

With respect to Item 3, DHS stated that, after a reasonable search of its records, it did not have the requested records in its possession or under its custody or control. OOR Docket No. 2020-2750 Exhibit 1 at 17-18.

With respect to Item 4, DHS granted the Second Request in part and denied it in part, redacting: proposal and evaluation information under Section 708(b)(26); personal identification information under Section 708(b)(6)(i)(A);

---

[4] 65 P.S. §67.102. Section 102 defines "public record," in relevant part, as "[a] record, including a financial record, of a Commonwealth or local agency that . . . is not protected by a privilege." In turn, Section 102 defines "privilege," in pertinent part, as "[t]he attorney-work product doctrine, the attorney-client privilege, . . . or other privilege recognized by a court interpreting the laws of this Commonwealth." *Id.*

predecisional deliberations under Section 708(b)(10)(i)(A); information subject to the attorney-client privilege under Section 102; and information subject to the attorney work-product doctrine under Section 102. OOR Docket No. 2020-2750 Exhibit 1 at 18.

With respect to Item 5, DHS granted the Second Request in part and denied it in part, noting that information regarding the CPP was provided during the Pre-Application Conference for the RFA and that the PowerPoint presentation is available in the eMarketplace as part of Addendum 3. OOR Docket No. 2020-2750 Exhibit 1 at 18-19. DHS also explained that CPP submittals are part of the applications submitted in response to the RFA so they are exempt under Section 708(b)(26) until the award of the contract. *Id.* at 19.

With respect to Item 6, DHS granted in part and denied in part, redacting proposal information and evaluation documents under Section 708(b)(26), and personal identification information under Section 708(b)(6)(i)(A). OOR Docket No. 2020-2750 Exhibit 1 at 19.

With respect to Item 7, DHS granted the request, interpreting it as asking for the exact documents as they were produced in response to RTKL requests because the Second Request states, "any documents produced," and many of the records were redacted when given to the requesters. OOR Docket No. 2020-2750 Exhibit 1 at 19. On December 11, 2020, DHS notified United that the responsive records would be released in two batches, and the first batch was provided to United on December 15, 2020.

On December 30, 2020, United appealed DHS's response to OOR challenging DHS's redactions in Items 1, 2, 4, and 6, and asserting that DHS was required to provide an exemption log or some other itemization of the withheld

6

information. OOR Docket No. 2020-2750 Exhibit 1 at 2, 3-4.[5] On January 13, 2021, United sent a submission to OOR reiterating that the appeal is specific to the redactions within the records that DHS provided in response to the Second Request. United also withdrew any portion of its appeal that related to information that is trade secrets or confidential and proprietary information from other parties, and withdrew the appeal as to application materials submitted by any applicant.

On January 19, 2021, DHS submitted a position statement reiterating its grounds for denial and submitted the affidavits of Kern;[6] Andrea Bankes; Barry

---

[5] OOR subsequently granted the applications for Direct Interest Participant status in the appeal of other applicants, including Geisinger Health Plan, AmeriHealth Caritas Health Plan, and UPMC for You, Inc..

[6] In relevant part, Kern's affidavit restates the information regarding the RFA's Evaluation Committee, and that negotiations had not yet commenced and DHS had not yet awarded an agreement as provided in her prior affidavit. *See* OOR Docket No. 2020-2750 Exhibit 6 at 22-24. With respect to Items 1, 4, and 6 of United's Second Request, the affidavit states the following, in pertinent part:

> 27. I responded to and interpreted the request in [Items] 1, 4, and 6 to encompass records that include information and portions of the [a]pplicants' applications to fulfill [DHS's] needs explained in [the RFA].
>
> > a. Specifically, the communications between [DHS] and any [a]pplicant related to [the RFA] since July 2, 2020, including documents or communications related to debriefing requests, and bid protests contain parts and information from an [a]pplicant's proposal and sets forth plans and information for consideration to fulfill the service needs of [DHS].
> >
> > b. Documents and communications responsive to [Item] 6 are documents and communications between [DHS] and corporate references that reflect information regarding each [a]pplicant's corporate reference as provided in the

**(Footnote continued on next page…)**

applications and contain information of communications with those references that was requested as part of the application process and used in the evaluation process. . . .

28. I responded to and interpreted [United's Second Request] in [Item] 4 to encompass internal deliberative documents and communications relating to debriefing requests by [a]pplicants about [the RFA].

    a. Specifically, documents and communications responsive to [Item] 4 are internal to [DHS], reflect the deliberations of [DHS] staff relating to debriefings, and occur prior to the requested debriefings.

29. I responded to and interpreted the request in [Items] 1, 4, and 6 to encompass records that include records of the evaluation committee members.

    a. Documents responsive to [Items] 1 and 4 include debriefing documents which contain the evaluation committee members' notes regarding the strengths and weaknesses of the [a]pplicants.

    b. Documents responsive to [Item] 6 are documents and communications between [DHS] and corporate references that reflect information regarding each [a]pplicant's corporate reference as provided in the applications and contain information of communications with those references that was requested as part of the application process and used in the evaluation process. . . .

30. I responded to and interpreted the request in [Item] 4 to encompass communications with [DHS's] Legal office. The communications were sent seeking advice regarding requests for debriefings.

31. The documents responsive to [Items] 1, 4, and 6 in the [Second R]equest also contained personal email addresses, cell phone numbers, and personal telephone numbers.

**(Footnote continued on next page…)**

8

Bowman, its Managed Care Operations Chief and Director of its Division of Monitoring and Compliance;[7] and Sallie Rodgers, its Deputy Chief Counsel for the

> a. Under the RTKL, personal identification information is exempt from disclosure. 65 P.S. §67.708(b)(6).
>
> b. Furthermore, third parties have a [c]onstitutional right to privacy and reputation. Personal information is exempt from disclosure pursuant to a [c]onstitutional right of privacy.
>
> * * *
>
> 33. Some of the documents responsive to the [Items] in the request contained application information. My understanding of [S]ection 708(b)(26)[] is that, as of this date, none of the applications that were submitted in response to [the RFA] are "public records." Therefore, none of the documents that contain any part of the applications are "public records."

OOR Docket No. 2020-2750 Exhibit 6 at 24-25 (citations omitted).

[7] Bowman's affidavit states the following, in pertinent part:

> 8. Readiness [r]eview is the process by with [the Office of Medical Assistance Programs (OMAP)] determines that MCOs that were determined successful applicants through the procurement process comply with all the elements of the HealthChoices Physical Health standard MCO Agreement in both an operational capacity and Management Information Systems (MIS).
>
> * * *
>
> 11. Since formal protests were filed related to the RFA[,] OMAP did not commence with the [r]eadiness [r]eview process.
>
> 12. Some of the responsive records contain internal discussions between OMAP staff about proposed [DHS] actions.

**(Footnote continued on next page…)**

9

Office of General Counsel.[8] That same day, United provided a supplemental statement asserting that DHS provided another batch of records on January 13, 2021,

13. These discussions occurred before a final course of action was decided.

14. These documents and communications are between internal DHS staff, including legal counsel, occurring before a specific action, deliberative about that action.

15. Therefore, it is my understanding that the RTKL's predecisional deliberation exemption protects these documents and communications from disclosure. 65 P.S. §67.708(b)(10)(i)(A).

16. Some correspondence responsive to [Item] 2 also contains communications with DHS counsel preparing for litigation.

17. The communications contain the thoughts and strategy of DHS counsel in representing OMAP in bid protest litigation.

18. The documents responsive to [Item] 2 in the [Second R]equest also contained personal email addresses, cell phone numbers, and personal telephone numbers.

    a. Under the RTKL, personal identification information is exempt from disclosure. 65 P.S. §67.708(b)(6).

    b. Furthermore, third parties have a [c]onstitutional right to privacy and reputation. Personal information is exempt from disclosure pursuant to a [c]onstitutional right.

OOR Docket No. 2020-2750 Exhibit 6 at 16-17.

[8] Rodgers' affidavit states the following, in pertinent part:

1. I am an attorney and work for the Office of General Counsel [(OGC)], within [DHS]. Lara Antonuk [(Antonuk)] is an attorney and works for OGC, within [DHS].

**(Footnote continued on next page…)**

2. I became involved in advising [DHS] staff pertaining to [the RFA], including but not limited to, its issuance, selections for negotiations, debriefings and ensuing protests. At various times, []Antonuk, has been involved with advising [DHS] staff pertaining to [the RFA] including but not limited to its issuance, selections for negotiations, debriefings and ensuing protests.

3. I was notified of [United's Second Request] that included two [items] requesting documents or communications pertaining to the following:

- [Item] 2: Any documents or communications related to the readiness[]review process described in the [RFA] created or revised since July 2, 2020; and

- [Item] 4: Any documents or communications, both internal and external, related to debriefing requests by any RFA[] applicant.

4. I interpreted these two [items] to include attorney-client correspondence and attorney written work, which is protected from disclosure pursuant to the attorney-client privilege and attorney work-product doctrine. *See* 65 P.S. §67.102 (definition of "privilege").

5. My email correspondence and work products are encompassed by this request. Email correspondence and work products by []Antonuk are also encompassed by this request.

* * *

10. [DHS] staff routinely interact with OGC attorneys. The mutual understanding of [DHS] staff and the OGC attorneys is that legal advice provided by the attorneys to the staff is confidential and subject to the attorney-client privilege.

11. There are records encompassed by [United's Second Request] that were sent by [DHS] staff to an OGC attorney, and those sent by an OGC attorney, and I can say without any doubt that[]

**(Footnote continued on next page…)**

11

and argued that its objections to the second batch of records that DHS provided should be included in the appeal.[9]

On February 12, 2021, OOR issued a Final Determination disposing of United's appeal of DHS's response to its Second Request. Regarding DHS's redaction of information from Items 1, 4, and 6 based on the Section 708(b)(26) exemption, OOR stated:

> a. None of the messages was sent for the purpose of committing a crime.
>
> b. None of the messages was sent for the purposes of committing a tort.
>
> c. The messages contain requests from [DHS] staff to OGC counsel to obtain legal advice, and from OGC counsel to [DHS] staff providing legal advice and work product, preparing for litigation pertaining to the procurement process, debriefings and bid protests, and assisting in the preparation of bid protest responses.
>
> 12. None of these communications, to or from an OGC attorney, set forth a waiver of the attorney-client privilege.
>
> 13. Records responsive to the above requests also contain attorney-work product.
>
> > a. The records were authored by an attorney in the course of his or her professional duties, sent to another attorney or [DHS] staff, and contain the written work, the mental impressions, theories, and strategies of an attorney.

OOR Docket No. 2020-2750 Exhibit 6 at 19-20.

[9] Ultimately, OOR denied United's request, explaining that "in the appeal, [United] indicates that [it] is aware of a rolling production schedule, where [DHS] would provide the records in separate batches," and that, "[t]herefore, this appeal is limited to the records that [United] could review at the time of the appeal, for the purpose of challenging the redactions." OOR Docket No. 2020-2750 Exhibit 12 at 5.

Here, [DHS] provided records responsive to Items 1, 4, and 6, and made redactions to prevent disclosure of information related to proposal information and evaluation committee records. The records sought are not the entire applications themselves, but communications, which include documents that contain evaluation committee member notes, and records that would disclose information related to an applicant's references, which are part of the application process. Further, as asserted by several of the direct interest participants, the [Second] Request seeks records that contain the "[]financial information of a bidder or offeror requested in an invitation for bid or request for proposals to demonstrate the bidder's or offeror's economic capability. . . ." *See* 65 P.S. §67.708(b)(26)[.] Based on the affirmation of []Kern, [DHS] has proven that it properly redacted records responsive to Items 1, 4, and 6 as they would disclose information associated with [the RFA], which has not been awarded.

OOR Docket No. 2020-2750 Exhibit 12 at 11-12 (citations omitted).

Regarding DHS's redaction of information from Items 2 and 4 based on the Section 708(b)(10)(i)(A) predecisional deliberations exemption, OOR stated:

Here, the [Second] Request, in Items 2 and 4, seeks records related to the "readiness[]review" process and debriefing documents related to [the RFA]. [DHS], through the attestation of []Bowman regarding Item 2 and []Kern regarding Item 4, state that responsive records were redacted to prevent the disclosure of internal discussions related to deliberations that took place prior to taking an action. [DHS] specifically states that Item 2 contains redactions that were made to prevent disclosure of communications preparing for litigation and between [DHS] staff that occurred prior to the readiness[]review process and are deliberative in nature as they discuss proposed [DHS] actions. Item 4 redactions were made because the requested debriefing records contained internal [DHS] communications occurring prior to the sought debriefing, reflecting the deliberations of [DHS] staff.

13

> Therefore, based on the evidence provided, [DHS] has proven that a portion of email records were properly redacted as they are related to internal, predecisional deliberations and are exempt from disclosure. *See* 65 P.S. §67.708(b)(10)(i)(A).

OOR Docket No. 2020-2750 Exhibit 12 at 14.

Regarding DHS's redaction of information from Items 1, 2, 4, and 6 based on the Section 708(b)(6) personal identification information exemption, OOR stated:

> Here, []Kern attests that redactions were made to records responsive to Items 1, 4, and 6 where there was personal identification information, such as email addresses, cell phone numbers and personal telephone numbers. Additionally, []Bowman attests that redactions were made within records responsive to Item 2 for personal identification information, such as email addresses, cell phone numbers and personal telephone numbers.
>
> Therefore, based on the evidence provided, [DHS] properly redacted personal identification information from the records.

OOR Docket No. 2020-2750 Exhibit 12 at 15.

Regarding DHS's redaction of information based on the Section 102 attorney-client privilege and attorney work-product doctrine, citing Rodgers' affidavit, OOR stated:

> Here, [DHS] has responsive records in its possession that were either sent or received as part of an agreement where [DHS] is a client for the attorneys who provided legal advice. The communications that were redacted are between [DHS] and its attorneys regarding legal advice, opinions of law, legal services or advice in a legal matter and the privilege has not been waived by either party.

14

> Additionally, [DHS] has proved that the records are exempt as attorney work[]product and properly redacted where they contained mental impressions, theories and/or strategies of an attorney that were sent in the course of professional duties.
>
> [DHS] has provided sufficient evidence to prove that the redacted records are protected by the attorney-client and attorney work-product doctrines.

OOR Docket No. 2020-2750 Exhibit 12 at 18. Accordingly, OOR's Appeals Officer issued an order denying United's appeal of DHS's response to United's Second Request. *Id.* at 18-19. United then filed the instant appeal[10] of OOR's Final Determination.

### III.

United's sole claim in this appeal is that OOR's Final Determination should be reversed because "United appealed DHS's decision to withhold and redact records on the grounds that DHS did not adequately explain its withholdings and redactions, including its failure to catalogue each redaction and withheld document" and "OOR failed to address this issue." United's Brief of Petitioner at 4.[11] However, as this Court has explained:

---

[10] "In an appeal under the RTKL from a final determination of [] OOR, the review exercised by this Court is plenary with respect to both questions of fact and law. This Court reviews [] OOR's orders independently and may substitute its own findings of fact for those of [] OOR." *Payne v. Pennsylvania Department of Health*, 240 A.3d 221, 225 n.6 (Pa. Cmwlth. 2020) (citation omitted).

[11] Pa. R.A.P. 2111(a)(4) provides that "[t]he brief of the appellant . . . shall consist of the following matters, separately and distinctly entitled and in the following order: . . . Statement of the questions involved." In turn, Pa. R.A.P. 2116(a) states, in relevant part:

> The statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of

**(Footnote continued on next page…)**

15

Under the RTKL, an agency bears the burden of proving, by a preponderance of the evidence, that a record is protected from disclosure under one of the enumerated exemptions or contains privileged material. Section 708(a)(1) of the RTKL, 65 P.S. §67.708(a)(1)[.] A preponderance of the evidence is a finding "that the existence of a contested fact is more probable than its nonexistence."

An agency may present sufficient evidence by the submission of affidavits.

> Affidavits are the means through which a governmental agency . . . justifies nondisclosure of the requested documents under each exemption upon which it relied. . . . The affidavits must be detailed, nonconclusory, and submitted in good faith. . . . Absent evidence of bad faith, the veracity of an agency's submissions explaining reasons for nondisclosure should not be questioned.

However, conclusory affidavits, standing alone, will not satisfy an agency's burden of proof under the RTKL. Moreover, the affidavit must be specific enough to permit OOR or a reviewing court to ascertain whether the claimed exemption applies to the records.

In addition to affidavits, an agency may justify its exemptions with an item-by-item indexing system, commonly referred to as a privilege or exemption log. Such a log "typically lists the date, record type, author,

---

the case but without unnecessary detail. The statement will be deemed to include every subsidiary question fairly comprised therein. No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.

Accordingly, to the extent that United raises issues in its appellate brief that are not "fairly suggested" by the quoted Statement of Questions Involved, they are waived for purposes of appeal. *See, e.g.*, *Mooney v. Greater New Castle Development Corp.*, 510 A.2d 344, 348 n.4 (Pa. 1986) ("The Superior Court refused to decide this question because it was not set forth in the statement of questions involved as required by Pa. R.A.P. 2116; and, therefore, it was not properly before that court. For this reason, we will not consider the question.").

recipients, and a description of the withheld record. . . ." A log "can serve as sufficient evidence to establish an exemption, especially where the information in the log is bolstered with averments in an affidavit." "An index, even one containing minimal description, offers a tool for a fact-finder reviewing corresponding records."

*UnitedHealthcare of Pennsylvania, Inc. v. Pennsylvania Department of Human Services*, 187 A.3d 1046, 1059 (Pa. Cmwlth. 2018) (citations and footnote omitted).

In fact, this Court has observed:

OOR has the authority to request production of an exemption log and to conduct *in camera* review of documents where an exemption or privilege has been asserted. **However, where an agency sufficiently explains the basis for nondisclosure through an affidavit, a log or *in camera* review may not be necessary**.

*Id.* at 1060 (citations omitted and emphasis added).

Indeed, in a similar circumstance, this Court noted:

While a claim of attorney-client privilege can be denied if the party asserting it does not provide a privilege log *or explain its claim in any other way*, a privilege log was not necessary in this case. First, the [school d]istrict set forth a description of the emails it was withholding in the affidavit of its Open Records Officer that it attached to its petition for review filed with the trial court. Second, the [school d]istrict stated that it was withholding all 19 pages of the emails based on an exception in the RTKL and it specifically notified [the r]equester that the documents were exempt from disclosure pursuant to attorney-client privilege. Therefore, the trial court did not err by not requiring the [school d]istrict to provide a privilege log.

*Chambersburg Area School District v. Dorsey*, 97 A.3d 1281, 1289 (Pa. Cmwlth. 2014) (citation omitted and emphasis in original).

Likewise, as extensively and exhaustively outlined above, the affidavits that DHS submitted in support of the redactions and nondisclosures contained the requisite specificity and were not conclusory, thereby distinguishing this case from those relied upon by United in its brief. Moreover, the affidavits permitted OOR, and permit this Court, to conduct the requisite review of DHS's response to United's Second Request. *See, e.g.*, *UnitedHealthcare*, 187 A.3d at 1059 ("Absent evidence of bad faith, the veracity of an agency's submissions explaining reasons for nondisclosure should not be questioned."). As a result, OOR did not err or abuse its discretion in failing to require DHS to provide a privilege or exemption log or in failing to conduct *in camera* review of the requested records.

Thus, United's claim that DHS did not adequately explain its withholdings and redactions and failed to catalogue each redaction and withheld document is patently without merit. Furthermore, OOR's purported failure to address this issue is not a basis upon which its Final Determination will be reversed.[12]

Accordingly, OOR's Final Determination is affirmed.

_____
MICHAEL H. WOJCIK, Judge

Judge Wallace did not participate in the decision of this case.

---

[12] *See, e.g.*, *Garner v. Pennsylvania Human Relations Commission*, 16 A.3d 1189, 1200 (Pa. Cmwlth. 2011) ("[R]eversible error requires the determination 'must not only be erroneous, but also harmful or prejudicial to the complaining party.' *D.Z. v. Bethlehem Area School District*, 2 A.3d 712, 726 (Pa. Cmwlth. 2010). '[A]n order of an administrative agency will not be disturbed for harmless error.' *Id.* at 725-26."); *Sturpe v. Unemployment Compensation Board of Review*, 823 A.2d 239, 242 (Pa. Cmwlth. 2003) (holding that errors contained in the Board's order as being "harmless" where they were found to "have no effect on this outcome"); *see also Sloan v. Workers' Compensation Appeal Board (Children's Hospital of Philadelphia)*, 124 A.3d 778, 786 n.8 (Pa. Cmwlth. 2015) ("This Court may affirm on grounds other than those relied on below where other grounds for affirmance exist.") (citations omitted).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

UnitedHealthcare of Pennsylvania, Inc.,     :
                                                  :
                      Petitioner       :
                                                  :
          v.                   :   No. 245 C.D. 2021
                                                  :
Department of Human Services       :
(Office of Open Records),             :
                                                  :
                    Respondent     :

# **O R D E R**

AND NOW, this 15th day of December, 2022, the Final Determination of the Office of Open Records, dated February 12, 2021, at Docket No. AP 2020-2750, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge