**Gretchen JENKINS, Petitioner**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (WOODVILLE STATE HOSPITAL), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted April 4, 1996.

Decided June 7, 1996.

Reargument Denied July 18, 1996.

Peter M. Suwak, for Petitioner.

Roy F. Walters, Jr.; and Rhonda A. Rudman, for Respondent.

Before COLINS, President Judge, FLAHERTY, J., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Gretchen Jenkins (Claimant) petitions for review of an order of the Workmen's Compensation Appeal Board that affirmed a Workers' Compensation Judge's (WCJ) decision granting Woodville State Hospital's (Employer) termination petition. We affirm.

On January 29, 1989, Claimant sustained a work-related injury to her left shoulder, while performing her duties as a licensed practical nurse. Employer issued a notice of compensation payable and Claimant received total disability benefits.

On March 19, 1993, Employer filed a termination petition,[1] alleging that Claimant's disability from her work-related injury had ceased as of March 11, 1993, and that Claimant was able to resume her pre-injury job. Employer also requested a supersedeas. Claimant denied the allegation and hearings were held before a WCJ.

---

1. Employer had previously filed a termination petition in 1991, but withdrew it after deposi- tions were taken.

At the first hearing held on May 12, 1993, Employer submitted the report of William H. Mitchell, M.D., and Claimant submitted fifteen reports from numerous doctors that had treated Claimant since her injury. Both parties objected to the other parties' submissions on hearsay grounds. The WCJ sustained the objections on the merits only, but determined that the reports would be considered in connection with the supersedeas request. On June 23, 1993, the WCJ issued an interlocutory order granting Employer's supersedeas request.

With regard to the merits of the case, Employer presented the deposition testimony of Dr. Mitchell, a board certified orthopedic and hand surgeon, who examined Claimant for this litigation. Claimant testified on her own behalf and presented the deposition testimony of Joseph W. Bardzil, M.D., board certified in family practice, who has been Claimant's treating physician. Claimant also presented the deposition testimony of Bruce M. Cotugno, M.D., who is board certified in neurology and psychiatry. Reports from various other doctors who participated in Claimant's care were also made a part of the record and were reviewed by the doctors who were deposed by the parties. No evidence of job availability was offered.

In his findings of fact, the WCJ set forth in detail the testimony of Claimant and the medical witnesses. The WCJ accepted Dr. Mitchell's testimony as credible and persuasive, but rejected Dr. Bardzil's and Dr. Cotugno's testimony as not credible; however, no credibility determination was made as to Claimant. The WCJ further found that Claimant did not suffer from reflex sympathetic dystrophy (RSD) [2] and had no residual disability from the 1989 work injury to her shoulder. The WCJ further found that:

> 10. ... Claimant exhibited none of the objective findings associated with reflex sympathetic dystrophy, such as abnormal bone scan, bone demineralization, shrinking of the skin, changes around the nail beds or exquisite tenderness to light touch. The undersigned notes that Dr. Mitchell is an experienced orthopedic surgeon who has treated a number of patients with reflex sympathetic dystrophy. On the other hand, Dr. Bardzil is a family physician and Dr. Cotugno has only been in practice a little over a year. Those two physicians each treated one other patient with symptoms with reflex sympathetic dystrophy. Additionally, it is noted that a number of physicians who have examined claimant disagreed that claimant suffers from reflex sympathetic dystrophy.

(WCJ Decision, p. 5.)

■ The WCJ concluded that Employer had met its burden of proof that Claimant's disability had ceased as of March 11, 1993, and granted Employer's termination petition. Claimant appealed to the Board, which affirmed. The Board quoted extensively from Dr. Mitchell's testimony, explaining that this testimony represented substantial, competent evidence to support the WCJ's findings that Claimant had completely recovered from her work injury and that she suffered no residual disability.

■ On appeal,[3] Claimant raises the following issues for our review: (1) whether the admitted existence of residual symptoms including pain and a temperature differential between Claimant's hands required the establishment by Employer of work availability; (2) whether the finding that Dr. Mitchell's testimony was credible was error in that his opinion was contrary to acceptable medical literature; (3) whether the WCJ erred in finding that Claimant's treating physician believed that Claimant was able to work when the record demonstrates the opposite; and (4) whether Claimant's constitutional due

---

**2.** RSD is defined as a "diffuse superficial and deep burning pain in an extremity associated with vasomotor disturbances, tropic changes, and limitation or immobility of joints as the result of some local injury." Stedman's Medical Dictionary 482 (25th ed. 1990).

**3.** Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Cmwlth. 436, 550 A.2d 1364 (1988).

process rights were violated when a supersedeas was issued without an evidentiary hearing.

The thrust of Claimant's first argument is that Dr. Mitchell's testimony, although relied upon by the WCJ for the finding that Claimant was completely recovered from her work-related injury, cannot substantiate a finding of a complete recovery resulting in an order of termination; that at best Dr. Mitchell's testimony can support a suspension which cannot be granted because no evidence of job availability was shown by Employer. Claimant bases this argument on Dr. Mitchell's statement during cross-examination that the coolness of Claimant's left hand in comparison to her right one (admittedly observed by Dr. Mitchell during the physical examination) could be a residual of her work-related condition. Claimant's argument also rests on Dr. Mitchell's acknowledgment that Claimant could be experiencing burning pain symptoms, although the doctor testified that he found no objective evidence that would account for Claimant's complaints of pain.

█ A significant proportion of all three doctors' testimony centered on the question whether Claimant suffered from RSD; however, the salient point is whether Employer has met its burden of proof when petitioning for a termination, i.e., whether Employer has proven that Claimant's disability has ceased entirely or is no longer the result of a work-related injury. *See McFaddin v. Workmen's Compensation Appeal Board (Monongahela Valley Hospital)*, 153 Pa.Cmwlth. 252, 620 A.2d 709 (1993).

In *McFaddin*, the employer sought a termination petition, alleging that the claimant, a nursing assistant, was fully recovered from her work-related lower back injury. The referee accepted the testimony of employer's medical witness as more credible than the testimony of claimant's medical witness and granted the termination petition. On appeal, one of the arguments made by the claimant concerned the failure of the employer to present evidence of job availability. The court pointed out that this element was not a part of the employer's burden because the referee had found that the claimant had fully recovered from her injury. The court fur-

ther stated that the employer's doctor did not acknowledge any continuing pain and, thus, his testimony supports a finding of full recovery.

This Court is also cognizant of the proposition advanced by the claimant in *Shepherd v. Workmen's Compensation Appeal Board*, 66 Pa.Cmwlth. 101, 443 A.2d 862 (1982). The claimant complained of pain and swelling of his knee. The claimant argued that a referee must find in favor of a claimant who complains of continued subjective symptoms even in the absence of medical evidence of an objective basis for his complaints. The *Shepherd* court affirmed the order of termination, concluding that these questions are factual and must rest with the fact finder, who may consider in making his findings the claimant's subjective complaints as well as the other medical evidence.

Here, Dr. Mitchell's testimony entailed answers to questions about Claimant's complaints of pain and a temperature differential between her two hands for which Dr. Mitchell stated he could not find an objective basis. A portion of Dr. Mitchell's testimony on direct is as follows:

Q. What did you notice about the patient's left hand as you continued to examine her?

A. The left hand was diffusely cool when compared with the right.

(Dr. Mitchell's Deposition, 6/18/93, p. 33.)

Q. Doctor, what, if any, significance did you attach to the coolness that the Claimant exhibited over the left hand?

A. The coolness was there, but it was not enough by itself to establish a diagnosis of reflex sympathetic dystrophy. There are many other conditions which can cause coolness; but, without other confirming criteria being met, it does not establish a diagnosis.

(Dr. Mitchell's Deposition, 6/18/93, p. 36.)

The pertinent testimony of Dr. Mitchell on cross-examination pointed to by Claimant is as follows:

Q. As we sit here today as an experienced orthopedic surgeon with some background in treating secondary nerve disor-

ders such as reflex sympathetic dystrophy, for the benefit of Gretchen Jenkins, could you state for the record to what, if anything, you specifically attribute the temperature changes in her left hand?

A. I can't be certain, but based on the history she gave and a review of all the records, I believe that she was in the process of developing a reflex sympathetic dystrophy, and it was aborted with the stellate ganglion block. The cool sensation I feel may be a residual from that, but again I'm not certain. But clearly, she does not have any circulatory problems now, so that's about the most I could say about the coolness.

Q. So I understand, you would not have an opinion to a reasonable degree of medical certainty as to what is causing the coolness in her left hand?

A. As far as a diagnosis goes, I would not. I feel it might be a residual, but that's not enough to base a firm diagnosis on.

Q. All right. So, it's just a symptom that you cannot explain?

A. Well, I can explain it, but not with a reasonable degree of medical accuracy. I'll put it that way.

Q. Your speculation at this time is that it may be a residual from the earlier progression which was terminated of reflex sympathetic dystrophy?

A. That would summarize it, yes.

Q. Now, this concept of residuals, Doctor, can you help me understand that? In other words, if we have a situation where a person is along the way to developing this particular syndrome and it is retarded or halted through the intervention of the blocks, and yet there are residual symptoms, are there any—could one of the residual symptoms include a burning sensation or a pain?

A. Yes, a burning sensation can be a complaint from this type of problem as well as other problems. Whether I would call it a residual or not would depend on whether I could confirm it, but you might call it a residual.

Q. And do you have an opinion to a reasonable degree of medical certainty as to whether or not Gretchen Jenkins is or is not suffering from burning sensation or pain?

A. As far as I'm able, I cannot confirm the existence of that pain by objective methods. That doesn't mean that she doesn't experience it. It just means that I can't confirm it.

Q. Just so I'm clear, ultimately, the Referee would have to make a credibility determination concerning whether or not for legal purposes the pain exists. Medically, you have no objective criteria to confirm it; but, as I understand it, you're not going so far as to state to the Referee that she can't possibly be experiencing it?

A. That's correct.

(Dr. Mitchell's Deposition, 6/18/93, pp. 44–47.)

While the WCJ's decision here could have been decided in Claimant's favor, we recognize that the WCJ is the ultimate finder of fact in worker's compensation proceedings. *McFaddin.* Questions of credibility and weight of the evidence are within the province of the WCJ who is free to accept or reject the testimony of any witness, in whole or in part. *Id.* Moreover, questions concerning subjective symptoms are factual determination reserved for the fact finder. *Shepherd.*

Although Dr. Mitchell's testimony, which was found credible by the WCJ, could have been interpreted as suggesting a residual, it was not credited in that manner. Based on Dr. Mitchell's testimony, the WCJ found no residual from the work-related injury and, therefore, ordered the termination. We cannot overturn credibility determinations nor can we overturn findings based on substantial evidence, which this record provides. Moreover, as stated in *Shepherd,* a medical opinion, indicating no objective abnormalities to support complained of subjective symptoms, joined with an opinion that a claimant has completely recovered and can return to work, will support a termination of benefits.

With regard to the second and third issues raised, Claimant relies on the premise that a treating physician's testimony should be given greater weight by the fact finder than the testimony of a doctor engaged to examine a claimant for the purposes of litigation. This is not the law. As stated above, the credibility and weight to be given testimony is within the province of the WCJ and cannot be overturned on appeal. *Lehigh County Vo–Tech School v. Workmen's Compensation Appeal Board (Wolfe)*, 539 Pa. 322, 652 A.2d 797 (1995).

Moreover, as to Claimant's claim that Dr. Mitchell's opinion failed to follow accepted medical literature, we reviewed Dr. Mitchell's response to questions concerning various published medical articles. He explained that the articles from medical journals referred to by Claimant's attorney during his deposition were not published in journals that use a peer review standard and that, therefore, they were not necessarily representative of the views held by a respectable portion of the medical community. A difference of opinion and a WCJ's acceptance of one medical opinion over another is not the basis for reversible error. *Spring Gulch Campgrounds v. Workmen's Compensation Appeal Board (Schneebele)*, 148 Pa. Cmwlth. 553, 612 A.2d 546 (1992), *petition for allowance of appeal denied*, 533 Pa. 620, 619 A.2d 701 (1993).

Lastly, Claimant contends that she was not afforded her due process rights when the supersedeas was issued because no evidentiary hearing was held. As a part of this last issue, Claimant also argues that due to the illness of WCJ Roney another WCJ had to be substituted for some of the hearings and that WCJ Roney's findings of fact and conclusions of law mirror those proposed by Employer, evidencing a failure to thoroughly review the record.

Claimant's contention that no hearing was held with regard to the supersedeas is belied by the record. At the first hearing before the WCJ, both parties submitted reports from various doctors. The WCJ accepted these reports for the singular purpose of deciding whether a supersedeas was appropriate and after consideration of these documents issued the supersedeas order.

Pursuant to Section 413 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 774, and 34 Pa.Code § 131.42 (WCJ Rules), a WCJ has discretion to grant a supersedeas based on the evidence presented to him. The WCJ Rules list the types of evidence that a party has a right to submit for consideration. Doctor's reports are among those listed; however, Claimant could have presented additional evidence in the form of oral testimony or other written reports if she was so inclined. Her failure to do so does not render the hearing constitutionally infirm.

Finally, we conclude that Claimant's argument concerning apparent adoption by the WCJ of Employer's suggested findings and conclusion is without merit. *See Reinstadtler v. Workmen's Compensation Appeal Board (Egler, Anstandig, Garrett & Riley)*, 143 Pa.Cmwlth. 429, 599 A.2d 266 (1991), *petition for allowance of appeal denied*, 530 Pa. 649, 607 A.2d 258 (1992). Although this practice of verbatim adoption has been criticized, the law remains that a WCJ may adopt a party's submitted findings as long as those findings are based on substantial evidence. *Id.* Without more than general allegations that the record was not thoroughly reviewed, it would be conjecture on our part to conclude that the WCJ failed to conduct a proper review. Moreover, our review of the record shows that WCJ Roney presided at most of the hearing and that the substitution of another WCJ to conduct some of the hearings comports with Section 415 of the Act, 77 P.S. § 851. *See also Biagini v. Workmen's Compensation Appeal Board (Merit Contracting Co.)*, 158 Pa.Cmwlth. 648, 632 A.2d 956 (1993), *petition for allowance of appeal denied*, 537 Pa. 667, 644 A.2d 1203 (1994).

Accordingly, based on the foregoing discussion of all issues raised, we affirm the Board's order granting Employer's termination petition.

## ORDER

NOW, June 7, 1996, the order of the Workmen's Compensation Appeal Board, dated September 18, 1995, at No. A94-2345, is affirmed.

FLAHERTY, Judge, dissenting.

I respectfully dissent. Initially, it is acknowledged that the existence of subjective pain does not, in and of itself, preclude a physician from determining that a claimant has fully recovered from his or her work injury. *See Laird v. Workmen's Compensation Appeal Board (Michael Curran & Associates),* 137 Pa.Cmwlth. 206, 585 A.2d 602 (1991). Therefore, I do not dissent to the grant of a termination on those grounds. However, the temperature difference between Claimant's right and left hand is an objective finding. Employer failed to establish that this temperature difference is not the result of Claimant's work-related injury.

The WCJ found credible the testimony of Employer's physician. Although Dr. Mitchell could not, or would not, find any objective basis for the coolness in Claimant's left hand, he could not rule out the possibility that this temperature difference is a residual of a reflex sympathetic dystrophy. Although stating he was not certain, Dr. Mitchell testified that the "cool sensation ... may be a residual from [a reflex sympathetic dystrophy]." (Dr. Mitchell's 6/18/93 deposition, p. 44). Dr. Mitchell also testified that he felt the coolness in Claimant's left hand "might be a residual," but he did not believe this was enough evidence on which to base a firm diagnosis. (Dr. Mitchell's 6/18/93 deposition, p. 45).

Indeed, if this were a claim petition, Claimant would be hard-pressed to rely on this testimony as unequivocal evidence to *establish* a work-related disability. However, as this is a termination petition, it is Employer that bears the burden of proving, through unequivocal evidence, that *all* disability associated with Claimant's work injury has ceased and terminated. *Victor's Jewelers v. Workmen's Compensation Appeal Board (Bergelson),* 145 Pa.Cmwlth. 630, 604 A.2d 1127 (1992). Based on the testimony of its own physician, I do not believe Employer met this burden.