# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Catherine Quinn, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 618 C.D. 2017 |
| | : | Submitted: September 29, 2017 |
| Workers' Compensation Appeal | : | |
| Board (McGrath Technical | : | |
| Staffing Inc.), | : | |
| Respondent | : | |

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**              **FILED: January 26, 2018**

Catherine Quinn (Claimant) petitions for review from an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a Workers' Compensation Judge (WCJ). The WCJ granted the termination petition filed by McGrath Technical Staffing Inc. (Employer) and denied Claimant's review petition seeking to amend the description of Claimant's accepted work injury. Claimant contends that the Board's decision contains errors of law, capriciously disregards competent evidence, is inconsistent and unsupported by the record, and is not well-reasoned. Claimant also challenges the Board's denial of litigation costs. Upon review, we affirm.

## I. Background

Claimant worked for Employer as a program manager. In September 2014, Claimant fell on a set of stairs at work and hit her head. WCJ's Op., 8/4/16,

Finding of Fact (F.F.) No. 1.b. Employer issued a notice of temporary compensation payable (NTCP) for her injury, described as a head and neck contusion. WCJ's Op. at 1. The NTCP later converted to a notice of compensation payable (NCP). Id.

Although Claimant's head and neck injury largely resolved over time, she stated she had ongoing problems with focus and short-term memory. F.F. No. 1.h, k. She attributed those problems to her head injury. F.F. No. 1.k. Notably, however, Claimant's doctors prescribed several daily medications, including narcotic pain relievers and medications for bipolar disorder, from which she suffered beginning in 2005. F.F. Nos.1.e, h, j, l.

While attending physical therapy for her neck injury the month after her injury, Claimant began having back pain radiating down her left leg. F.F. No. 1.d. The pain persisted and worsened, later spreading to Claimant's right leg as well. F.F. No. 1.f. She also reported swelling and discoloration in her legs. Id. She described these symptoms as occurring in periodic flare-ups. Id. She took photographs of her legs during flare-ups to document the problems. Id. During periods between flare-ups, Claimant's legs had a normal appearance. F.F. No. 1.n.

In May 2015, Claimant filed a review petition, seeking an amendment to the description of her accepted injury to include a concussion, reflex sympathetic dystrophy, and complex regional pain syndrome (CRPS).[1] In September 2015,

---

[1] The medical experts for both parties stated that reflex sympathetic dystrophy is merely an older name for the condition now known as complex regional pain syndrome. We therefore use the designation CRPS throughout this opinion to refer to the condition at issue.

2

Employer filed a termination petition, alleging Claimant fully recovered from her work injury. The petitions were consolidated for litigation purposes.

Claimant testified live before the WCJ. She stated she began physical therapy the month after her injury. WCJ's Hr'g, Notes of Testimony (N.T.), 10/22/15, at 13. Immediately after starting physical therapy, she began having pain in her back and down her left leg. Id. At the time of the hearing, Claimant stated her back pain was subsiding, but her leg pain moved to her right leg. N.T. at 15. She stated her leg "turns bright pink and purple" and swells. Id. She described her symptoms as occurring in "flares" that "happen very often within every two weeks and they can last up to two weeks." Id. She stated she took photos every time she experienced a flare-up, "just in case I need to prove it and go to court." Id. However, she did not submit any photos in evidence. She further stated she showed photos of her left leg to Dr. Richard Katz, who conducted an independent medical examination (IME) at Employer's request. N.T. at 16. She also described "spasms" of "shooting pain" in her leg, during which her leg would appear normal, but she could not tolerate sheets or even air on her leg. N.T. at 15.

Claimant takes Lyrica and Oxycodone daily for pain. N.T. at 16-17; Reproduced Record (R.R.) at 133a. She also takes Baclofen, an antispasticity agent. R.R. at 133a. In addition, she takes Seroquel, Promethazine, and Klonopin to treat bipolar disorder. N.T. at 19. She stated, "[m]y case is caused by stress." N.T. at 23. She claimed she was in pain during the hearing, solely because of stress. N.T. at 24.

Claimant testified she was incapable of returning to work because of short-term memory loss and taking narcotic pain medication. N.T. at 16. She stated that she cannot "be on narcotics and driving." N.T. at 24. Nevertheless, she does drive a car, and she can drive up to an hour without serious pain. N.T. at 20. She drove herself to the hearing. N.T. at 25.

Claimant submitted depositions from two medical experts. Jeffrey Heebner, D.O., is board certified in family practice, geriatrics, hospice, and palliative care medicine (Claimant's Family Doctor). Stephen Sacks, D.O., is board certified in neurology and psychiatry (Claimant's Neurologist). Claimant's two medical experts were not in full agreement with each other. Claimant's Family Doctor testified that Claimant was not yet fully recovered from her head and neck injury and still suffered short-term memory problems. R.R. at 131a-33a. However, Claimant's Neurologist stated that by the time he saw Claimant three months after her injury, he believed the symptoms from her concussion were gone and her issues with focus and concentration resulted from her leg pain, not her concussion. R.R. at 173a-76a. Claimant's Neurologist also opined that Claimant was capable of returning to work in an office environment, although her medications might create ongoing concentration issues. R.R. at 178a-79a.

Claimants' experts also testified that the symptoms in Claimant's low back and legs were consistent with CRPS. R.R. at 131a-33a, 174a. They opined further that although the symptoms presented in her low back and legs, Claimant developed CRPS as a result of injuring her head and neck at work. R.R. at 133a, 175a-76a. Claimant's Neurologist explained that he believed Claimant developed

CRPS not directly from her work injury, but rather, as a result of the physical therapy she received after the injury.  R.R. at 177a.

Claimant's Family Doctor acknowledged he was not an expert on CRPS; he merely supported the diagnosis made by others.  R.R. at 132a-33a, 136a. In addition, Claimant's Family Doctor testified the possible causal link between an injury and subsequent remote CRPS symptoms is "a poorly understood medical phenomenon where really the symptomatology and presentation – we have a paucity of studies that can confirm and say a hundred precent [sic] this is the diagnosis and the causality is actually poorly understood."  R.R. at 135a.  Claimant's Family Doctor acknowledged it was possible some other minor trauma more proximate to her legs, rather than Claimant's work injury, caused her chronic leg pain.  R.R. at 136a.

Claimant's Neurologist similarly acknowledged that it was possible some other minor trauma, not the work injury to her head and neck, caused Claimant's leg pain.  R.R. at 178a.  Claimant's Neurologist further testified that any additional trauma could exacerbate Claimant's CRPS, and that Claimant suffered such trauma when a dog bit her sometime after her work injury.  R.R. at 175a.

Employer submitted depositions from two medical experts.  Karl Rosenfeld, M.D., F.A.C.S., is board certified in orthopedic surgery (Employer's Orthopedist).  Richard Katz, M.D., is board certified in psychiatry and neurology, as well as in neurophysiology and electrodiagnosis (Employer's Neurologist). Employer's Orthopedist performed an IME of Claimant in March 2015.  Employer's

5

Neurologist performed an IME in August 2015. Both opined that Claimant fully recovered from her work injury. Employer's Orthopedist opined that Claimant was capable of returning to work without restrictions. R.R. at 37a, 49a. Employer's Orthopedist referenced the opinion of Claimant's Neurologist that Claimant's problems with mental focus were due to her leg pain rather than any residual effects of a concussion. R.R. at 20a. Employer's Neurologist opined that any memory issues resulted from Claimant's various medications, not from her head injury. R.R. at 102a, 106a.

Employer's experts both opined that Claimant did not suffer from CRPS, based on the absence of objectively verifiable symptoms and on negative tests and studies. R.R. at 25a, 29a, 91a-94a. Employer's Orthopedist also opined that Claimant's leg pain was not causally related to her work injury. R.R. at 53a.

The WCJ found Claimant not credible or persuasive, based largely on Claimant's affect and demeanor during her testimony before the WCJ. F.F. No. 8. The WCJ also based her determination on the absence of any objective symptoms of CRPS during the two IMEs conducted by Employer's Experts. Id. Further, the WCJ noted that although Claimant stated she had extreme sensitivity in her legs during flare-ups, she was able to shave her legs and they were clean-shaven during her IMEs. Id. In addition, the WCJ noted that Claimant testified that she had ongoing concussion symptoms from her head injury, yet she told her own treating physician that those symptoms resolved. Id.

The WCJ also rejected the testimony of Claimant's Experts as not credible. She rejected Claimant's Family Doctor's opinion that Claimant developed CRPS related to her work injury, because Claimant's Family Doctor did not personally see any symptoms of CRPS until three months after the injury. F.F. No. 9. Further, he did not ask Claimant about other potential trauma that might have caused CRPS. Id. Moreover, Claimant's Family Doctor did not diagnose CRPS himself, but referred Claimant to Claimant's Neurologist for a diagnosis. Id.

The WCJ similarly rejected the testimony of Claimant's Neurologist, except for his opinion that Claimant recovered from her head injury. F.F. No. 10. The WCJ noted that although Claimant's Neurologist testified Claimant developed CRPS from physical therapy related to her work injury, he never reviewed Claimant's physical therapy treatment records. Id.

The WCJ accepted the testimony of Employer's Experts as credible and persuasive. F.F. No. 11. The WCJ found Employer's Neurologist's opinion was consistent with that of Claimant's Neurologist that Claimant fully recovered from her concussion. Id. The WCJ also credited Employer's Orthopedist's testimony that Claimant's bone scan and MRI studies were normal and that there were no objective findings in his IME of Claimant to support a diagnosis of CRPS. Id.

Based on the evidence as a whole, the WCJ found Employer sustained its burden of proof on the termination petition, and Claimant failed to sustain her burden of proof on the review petition. Accordingly, the WCJ granted the termination petition and denied the review petition.

Claimant appealed to the Board, which affirmed the WCJ's decision. Claimant then filed a petition for review with this Court.

## II. Issues

On appeal,[2] Claimant argues that the Board erred by affirming the WCJ's grant of the termination petition and denial of the review petition. Claimant also asserts entitlement to an award of litigation costs.

## III. Discussion

A claimant who files a review petition to include additional injuries in an NCP bears the same burden as for the initial claim petition. See Jeanes Hosp. v. Workers' Comp. Appeal Bd. (Hass), 872 A.2d 159 (Pa. 2005), overruled in part on other grounds by Cinram Mfg., Inc. v. Workers' Comp. Appeal Bd. (Hill), 975 A.2d 577 (Pa. 2009). The claimant must prove a causal relationship between a subsequently claimed condition and the accepted work injury. Degraw v. Workers' Comp. Appeal Bd. (Redner's Warehouse Mkts., Inc.), 926 A.2d 997 (Pa. Cmwlth. 2007). Where causation is not obvious, the claimant must present unequivocal medical evidence in support of the review petition. Chick–Fil–A v. Workers' Comp. Appeal Bd. (Mollick), 792 A.2d 678 (Pa. Cmwlth. 2002).

An employer who files a termination petition bears the burden of establishing either that the claimant's disability ceased or that any remaining disability is unrelated to the work injury. Gillyard v. Workers' Comp. Appeal Bd.

---

[2] Our review is limited to determining whether an error of law was committed, whether necessary findings of fact were supported by substantial evidence, and whether constitutional rights were violated. Dep't of Transp. v. Workers' Comp. Appeal Bd. (Clippinger), 38 A.3d 1037 (Pa. Cmwlth. 2011).

8

(Pa. Liquor Control Bd.), 865 A.2d 991 (Pa. Cmwlth.) (en banc), appeal denied, 882 A.2d 1007 (Pa. 2005). An employer may satisfy this burden by submitting unequivocal medical evidence that the claimant fully recovered from the work-related injury. Westmoreland Cty. v. Workers' Comp. Appeal Bd. (Fuller), 942 A.2d 213 (Pa. Cmwlth. 2008).

### A. Credibility Determinations

The WCJ is the ultimate finder of fact in workers' compensation cases. Thus, questions of credibility and evidentiary weight are the exclusive province of the WCJ. A & J Builders, Inc. v. Workers' Comp. Appeal Bd. (Verdi), 78 A.3d 1233 (Pa. Cmwlth. 2013). The WCJ may accept or reject the testimony of any witness in whole or in part. Id.

To allow effective appellate review where testimony is presented by deposition, the WCJ must articulate an objective basis for a credibility determination. Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.), 893 A.2d 191 (Pa. Cmwlth. 2006). However, we will not second-guess the WCJ's reasons for credibility determinations and will uphold those determinations unless they are arbitrary or capricious. Id. An adverse credibility determination is not a capricious disregard of rejected testimony. Williams v. Workers' Comp. Appeal Bd. (USX Corp.–Fairless Works), 862 A.2d 137 (Pa. 2004).

Moreover, "[i]t is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether the record contains evidence to support the findings actually made." Furnari v.

Workers' Comp. Appeal Bd. (Temple Inland), 90 A.3d 53, 60 (Pa. Cmwlth. 2014). We examine the entire record to see if it contains evidence a reasonable person might find sufficient to support the WCJ's findings. Id. If the record contains such evidence, the findings must be upheld, even though the record may contain conflicting evidence. Id. Additionally, we must view the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced from the evidence. Id.

### 1. Claimant's Credibility

A WCJ may base a credibility determination solely on a witness's demeanor when the witness testifies live before the WCJ. Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.), 828 A.2d 1043 (Pa. 2003).

Here, Claimant testified live before the WCJ. The WCJ expressly based her credibility determination largely on Claimant's affect and demeanor during the hearing. F.F. No. 8. Thus, the WCJ properly rejected Claimant's testimony on this basis. Daniels.

Nevertheless, Claimant challenges two specific findings by the WCJ as not supported by the record. First, the WCJ stated Claimant's legs were clean-shaven at both of the IMEs performed by Employer's Experts, F.F. No. 8, but Claimant contends only Employer's Orthopedist so testified. Second, Claimant insists there is no record support for the WCJ's finding that Claimant told her treating physician her concussion symptoms resolved, F.F. No. 8.

10

Claimant characterizes these alleged factual errors as critical to the issue of credibility. A review of the WCJ's decision as a whole demonstrates they were not. See Pa. SSJI (Civ.) 4.20 (4th ed., 2013 Supp.) (believability of witnesses generally; factfinder "should consider whether the inaccuracy is in an important matter or a minor detail"). Rather, they were only additional support for the WCJ's credibility determination, which she based mainly on Claimant's affect and demeanor.

Moreover, Claimant does not challenge the WCJ's finding that Claimant exhibited no objective symptoms of CRPS during either IME. We note Claimant's contention that she experienced CRPS flare-ups about every two weeks, lasting up to two weeks each. This testimony, which was unsupported by objective medical evidence, stood in contrast to the absence of observable symptoms in two separate IMEs and several tests and studies. That contrast further supported the WCJ's rejection of Claimant's testimony as not credible. We also note that although Claimant stated she took photos of discoloration and swelling in her leg, she did not seek to enter any such photos in evidence.

**2. Experts' Credibility**

Claimant also challenges the WCJ's credibility assessments of the parties' medical experts. Claimant suggests the WCJ erred in crediting the opinions of Employer's Experts and rejecting those of Claimant's Experts. We disagree.

Regarding medical experts who testify by deposition, the WCJ must support her resolution of conflicting evidence with more than a statement that one

expert is more credible than another. Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.), 893 A.2d 191 (Pa. Cmwlth. 2006). However, a WCJ's acceptance of one medical expert's opinion over that of another does not constitute reversible error. Jenkins v. Workmen's Comp. Appeal Bd. (Woodville State Hosp.), 677 A.2d 1288 (Pa. Cmwlth. 1996). Indeed, a single medical expert's testimony is a reasonable basis upon which a WCJ may base a finding of fact despite conflicting evidence. Bethenergy Mines, Inc. v. Workmen's Comp. Appeal Bd. (Skirpan), 572 A.2d 838 (Pa. Cmwlth. 1990), aff'd, 612 A.2d 434 (Pa. 1992).

Here, Claimant argues the WCJ misstated the testimony of Employer's Orthopedist, one of Employer's Experts, by purportedly citing incorrect starting and ending dates for Claimant's physical therapy. However, the WCJ based her credibility determinations on the record as a whole; any error in citing Claimant's therapy dates was inconsequential. Further, Claimant fails to explain what bearing the WCJ's error in reciting the physical therapy dates had on Employer's Orthopedist's credibility.

Notably, Claimant does not challenge the WCJ's credibility determination regarding Employer's Neurologist, Employer's other expert. Employer's Neurologist opined that Claimant fully recovered from her work injury. F.F. No. 11. Thus, even relying solely on Employer's Neurologist, the record contained sufficient evidence to sustain Employer's burden of proof. See Bethenergy Mines.

12

## B. Reasoned Decision

Claimant also contends the WCJ did not display a grasp of the facts, and thus did not provide a reasoned decision. We discern no merit in this argument.

To satisfy the reasoned decision requirements of Section 422(a) of the Workers' Compensation Act (Act),[3] a WCJ must set forth the rationale for the decision by specifying the evidence relied upon and reasons for accepting it. Daniels; Dorsey. When conflicting evidence is presented, the WCJ must adequately explain the reason for rejecting or discrediting competent evidence. Daniels. The WCJ may not reject uncontroverted evidence without reason or for an irrational reason, but must identify such evidence and adequately explain the reasons for its rejection. Id. "[T]he purpose of a reasoned decision is to spare the reviewing court from having to imagine why the WCJ believed one witness over another." Dorsey, 893 A.2d at 196 (citation omitted).

Claimant contends the WCJ erred in finding that Claimant's leg symptoms did not first appear in recorded notes until December 2014. Claimant insists she complained of leg pain beginning in October 2014. However, Employer's Experts observed no objective symptoms of CRPS during their IMEs performed in March and August 2015. See, e.g., R.R. at 35a, 69a, 93a, 122a-25a. In addition, none of the medical tests and studies performed on Claimant offered any objective findings to support a diagnosis of CRPS. See, e.g., R.R. at 17a, 88a, 90a, 92a-95a, 122a-25a. In any event, the WCJ rejected Claimant's testimony as not credible.

---

[3] Act of June 2, 1915, P.L. 726, as amended, 77 P.S. §834.

13

Under these circumstances, Claimant has not explained how the date when she first complained of leg pain was material to the WCJ's decision.

The WCJ's decision satisfies the reasoned decision requirements of Section 422(a) of the Act, and the WCJ did not capriciously disregard the evidence Claimant presented. Because the record contains substantial evidence supporting the WCJ's credibility determinations, we will not disturb them.

### C. Litigation Costs

As a final issue, Claimant argues the WCJ erred in declining to award litigation costs. Despite the WCJ's denial of her review petition, Claimant contends the WCJ effectively amended the NCP by implicitly adding a concussion and a cervical sprain to the accepted injuries of head and neck contusions.

Section 440(a) of the Act, 77 P.S. §996(a),[4] authorizes an award of litigation costs to a claimant who prevails in whole or in part. However, the claimant must prevail on a contested issue in order to receive an award of litigation costs. Reyes v. Workers' Comp. Appeal Bd. (AMTEC), 967 A.2d 1071 (Pa. Cmwlth. 2009) (en banc).

Claimant argues that by finding Employer's Experts credible, the WCJ implicitly found Claimant suffered a concussion and a cervical sprain. However, Claimant does not point to anything in the record indicating either that Employer was disputing that fact, or that it had any effect on the outcome of either party's

---

[4] Section 440 was added by the Act of February 8, 1972, P.L. 25, as amended.

14

petition. In fact, the testimony of Employer's Experts demonstrated their assumption that Claimant suffered a concussion. <u>See</u>, <u>e.g.</u>, R.R. at 15a, 17a-18a, 20a, 22a, 36a, 40a, 46a, 90a-92a, 95a, 97a-98a. That was not a contested issue for purposes of an award of litigation costs.

The gravamen of the termination petition was that Claimant fully recovered from her work injury to her head and neck. The gravamen of the review petition was that Claimant developed CRPS in her legs as a result of the work injury to her head and neck. Whether to describe the work injury as a contusion and neck strain or a concussion and cervical sprain was not at issue. Regardless, the WCJ found Employer sustained its burden to show that Claimant recovered fully.

Claimant did not prevail before the WCJ or the Board, either in pursuing her review petition or in opposing Employer's termination petition. Further, she did not prevail on any contested issue material to the WCJ's decision. Therefore, she is not entitled to an award of litigation costs. <u>Reyes</u>.

## IV. Conclusion

Based on the foregoing, we affirm the order of the Board.

_____
ROBERT SIMPSON, Judge

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Catherine Quinn,                          :
                    Petitioner             :
                                           :
          v.                               :          No. 618 C.D. 2017
                                           :
Workers' Compensation Appeal               :
Board (McGrath Technical                   :
Staffing Inc.),                            :
                    Respondent             :

# **O R D E R**

    **AND NOW**, this 26th day of January, 2018, the decision of the Workers' Compensation Appeal Board is **AFFIRMED**.


                                   
                              ROBERT SIMPSON, Judge