# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kathy Wall,                                  :
                                             :
                Petitioner                   :
                                             :
        v.                                   : No. 1573 C.D. 2017
                                             : Submitted: February 9, 2018
Workers' Compensation Appeal                 :
Board (Commonwealth of                       :
Pennsylvania),                               :
                                             :
                Respondent                   :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                      **FILED:  May 31, 2018**


Kathy Wall (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) affirming the decision and order of a Workers' Compensation Judge (WCJ).  The WCJ granted in part and denied in part Claimant's petition to review compensation benefits (Review Petition) and granted the petition to terminate compensation benefits (Termination Petition) filed by Claimant's employer, the Commonwealth of Pennsylvania (Employer).  For the reasons stated below, we affirm.

Claimant was employed as a Liquor Store Clerk I in a store run by the Pennsylvania Liquor Control Board.  (WCJ Decision Finding of Fact (F.F.) ¶3.)

Prior to the incident at issue in this case, Claimant had for years sought medical treatment for neck and back problems, most recently following an October 2014 work injury. (*Id*. F.F. ¶4(b).) Following a March 2015 independent medical examination (IME) report, a doctor opined that Claimant had fully recovered from this work injury, an opinion with which Claimant was in agreement. (*Id*. F.F. ¶¶4(b), 11.) On April 11, 2015, Claimant sustained the work-related injury at issue in the current case when a cart that she was pushing toward a dumpster outside the store fell over as a result of a wind gust and knocked her over and against the cart. (*Id*. F.F. ¶¶3, 4(a).) On May 8, 2015, Employer recognized an injury to Claimant's left ankle, right knee and bilateral hand contusions through a medical-only notice of compensation payable (NCP) but denied that Claimant suffered any wage loss. (*Id*. F.F. ¶3.)

Claimant filed the Review Petition on July 9, 2015 asserting that the description of the work injury in the May 8, 2015 NCP was incorrect and requesting that her injury be amended to include lumbar strain and sprain, aggravation of degenerative disc disease in lumbar spine and lumbar disc injury. (Reproduced Record (R.R.) 13a.) At an August 13, 2015 hearing, Claimant orally amended the Review Petition to also include cervical strain and sprain and aggravation of degenerative disc disease in cervical spine in her revised list of injuries. (WCJ Decision F.F. ¶1.) In January 2016, the parties stipulated that Claimant became partially disabled on April 12, 2015 and was entitled to partial disability benefits as of that date and that Claimant became totally disabled on October 8, 2015 and was entitled to temporary total disability benefits as of that date. (*Id*. F.F. ¶3.) The parties further stipulated that the description of Claimant's injury and whether benefits would continue or be stopped would remain open for decision by the WCJ. (*Id*.)

Employer filed the Termination Petition on March 15, 2016 asserting that Claimant had fully recovered from the work injury as of October 26, 2015. (R.R. 17a.) Claimant returned to part-time work on March 22, 2016, and her benefits converted to partial disability benefits. (WCJ Decision F.F. ¶¶3, 6.) The Review Petition and Termination Petition were consolidated before the WCJ. Claimant testified before the WCJ and also presented the deposition testimony of Mark Avart, D.O., a board-certified orthopedic surgeon who was Claimant's treating physician. Employer presented the deposition testimony of Amir Fayyazi, M.D., a board-certified orthopedic surgeon who performed an IME of Claimant.

On September 26, 2016, the WCJ issued a decision granting the Review Petition in part, concluding that Claimant had met her burden of showing that she suffered the additional injuries not recognized in the May 8, 2015 NCP of a cervical strain and sprain, a lumbar strain and sprain and transient exacerbation of symptoms from cervical and lumbar spine degenerative disc disease. (WCJ Decision F.F. ¶17, Conclusion of Law (C.L.) ¶2, Order.) The WCJ also granted the Termination Petition, concluding that Employer had demonstrated that Claimant was fully recovered from the April 11, 2015 work injuries as of October 26, 2015, the date of Dr. Fayyazi's IME. (*Id.* F.F. ¶18, C.L. ¶3, Order.) In making these determinations, the WCJ found Claimant's testimony credible that she suffered a cervical strain and sprain and a lumbar strain and sprain, but not credible that she continued to suffer from symptoms from this work-related soft tissue injury rather than from a pre-existing degenerative spinal condition resulting from age, documented pre-injury cervical and lumbar spine degeneration and previous injuries. (*Id.* F.F. ¶¶15-16.) The WCJ also found Dr. Fayyazi's testimony to be more credible and persuasive than Dr. Avart's testimony, except to the extent that Dr. Fayyazi opined that Claimant did not suffer a lumbar strain and sprain. (*Id.* F.F. ¶16.) Claimant appealed

3

the determinations of the WCJ that she did not suffer a material aggravation of her lumbar and cervical degenerative disc disease on April 11, 2015 and that she had fully recovered from her work injury by October 26, 2015. The Board affirmed, concluding that there was substantial, competent evidence supporting both of these decisions.

On appeal to this Court,[1] Claimant argues that the Board erroneously affirmed the partial denial of her Review Petition and the grant of Employer's Termination Petition because the WCJ improperly credited the opinion of Dr. Fayyazi over that of Dr. Avart. Claimant asserts that, while she is not seeking that this Court disturb the WCJ's credibility determinations, our caselaw requires that in workers' compensation cases, the opinion of a treating doctor, so long as it is reasonable and supported by medical evidence, should be credited over the opinion of an expert retained for an IME. Claimant points out that in this case, Dr. Avart began treating Claimant in August 2015 and continued to treat her through the date of his deposition, while Dr. Fayyazi was retained by Employer for the sole purpose of conducting an IME and he examined Claimant on only one occasion. Claimant further argues that this Court should take note of the fact that Dr. Fayyazi maintains a robust and lucrative practice as an employer expert in workers' compensation cases. Claimant argues that, properly giving the testimony of Dr. Avart credit over the testimony of Dr. Fayyazi, the evidence supports a finding that Claimant's April 11, 2015 work injury constituted an aggravation of degenerative disc disease in the

---

[1] This Court's review of an appeal from a determination by the Board is limited to determining whether an error of law was committed, whether the WCJ's necessary findings of fact are supported by substantial evidence and whether Board procedures or constitutional rights were violated. *Gahring v. Workers' Compensation Appeal Board (R and R Builders)*, 128 A.3d 375, 379 n.6 (Pa. Cmwlth. 2015).

4

lumbar spine and lumbar disc injury and that Claimant had not fully recovered from the work injury by October 26, 2015.

Section 413(a) of the Workers' Compensation Act (Act)[2] authorizes a WCJ to amend an NCP where it is shown that the notice "was in any material respect incorrect." 77 P.S. § 771. Claimant, as the party seeking the correction of the description of the injury on the NCP, bore the burden to prove a material mistake of fact or law was made at the time the notice was issued. *Cinram Manufacturing, Inc. v. Workers' Compensation Appeal Board (Hill)*, 975 A.2d 577, 582 (Pa. 2009); *Anderson v. Workers' Compensation Appeal Board (Pennsylvania Hospital)*, 830 A.2d 636, 641 (Pa. Cmwlth. 2003). To succeed in a termination petition, an employer has the burden of proving either that the claimant's disability has ceased or that any current disability is unrelated to the work injury. *Hall v. Workers' Compensation Appeal Board (America Service Group)*, 3 A.3d 734, 740 (Pa. Cmwlth. 2010); *Gillyard v. Workers' Compensation Appeal Board (Pennsylvania Liquor Control Board)*, 865 A.2d 991, 995 (Pa. Cmwlth. 2005) (*en banc*). An employer may satisfy this burden by presenting unequivocal, competent medical evidence showing the claimant's full recovery from the work-related injuries. *Hall*, 3 A.3d at 740; *Gillyard*, 865 A.2d at 995.

In workers' compensation matters, the WCJ is the ultimate finder of fact and the exclusive arbiter of credibility and witness weight. *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1052 (Pa. 2003). The findings of the WCJ are conclusive on appeal, so long as they are supported by substantial evidence. *O'Donnell v. Workers' Compensation Appeal Board (United Parcel Service)*, 831 A.2d 784, 789 (Pa. Cmwlth. 2003). The WCJ may accept or

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.1, 2501-2708.

5

reject the testimony of any witness in whole or in part, including medical witnesses. *Furnari v. Workers' Compensation Appeal Board (Temple Inland)*, 90 A.3d 53, 70 (Pa. Cmwlth. 2014); *Stalworth v. Workers' Compensation Appeal Board (County of Delaware)*, 815 A.2d 23, 29 (Pa. Cmwlth. 2002). Determinations of witness credibility and evidentiary weight are not subject to appellate review except where made arbitrarily and capriciously. *Casne v. Workers' Compensation Appeal Board (STAT Couriers, Inc.)*, 962 A.2d 14, 19 (Pa. Cmwlth. 2008); *Dorsey v. Workers' Compensation Appeal Board (Crossing Construction Co.)*, 893 A.2d 191, 195 (Pa. Cmwlth. 2006).

In his deposition, Dr. Avart testified that he began treating Claimant on August 6, 2015, and he continued treating her through the date of his deposition. (Avart Deposition at 8, 14, R.R. 85a, 91a.) Dr. Avart testified that MRIs performed on her cervical spine and her lumbar spine in June and September 2015 showed that she had a strain and sprain of her neck and back, aggravation and exacerbation of pre-existing asymptomatic arthritis, moderate stenosis and degenerative disc disease. (*Id.* at 9-12, 14-16, R.R. 86a-89a, 91a-93a.) Dr. Avart ordered an EMG of Claimant's cervical spine, which was negative for acute cervical radiculopathy. (*Id.* at 16, R.R. 93a.) Dr. Avart's treatment of Claimant consisted of home physical therapy exercises and medication, including oxycodone for pain and Ambien to help her sleep when she is in pain. (*Id.* at 13-14, 16-17, 24, R.R. 90a-91a, 93a-94a, 101a.) Dr. Avart also placed Claimant on light-duty restrictions including limiting her to 4-hour shifts and lifting less than 10 pounds. (*Id.* at 13, 17, R.R. 90a, 94a.) Dr. Avart stated that Claimant was not able to return to work and perform her pre-injury job. (*Id.* at 19, R.R. 96a.)

Dr. Fayyazi testified that his October 26, 2015 physical examination of Claimant showed no physiological signs of injury and that his examination of her

lumbar and cervical spine was unremarkable. (Fayyazi Deposition at 16-18, R.R. 119a-20a.) Dr. Fayyazi stated that Claimant showed better-than-average-for-her-age range of motion for lumbar spine and close-to-full range of motion in her cervical spine with a complaint of discomfort at the base of her neck. (*Id.* at 15-17, R.R. 119a.) Dr. Fayyazi stated that based on his physical examination, the history Claimant provided and his review of medical records, he diagnosed Claimant with multi-level cervical degenerative disc disease that was pre-existing and not associated with a traumatic injury. (*Id.* at 20, R.R. 120a.) Dr. Fayyazi testified that Claimant had suffered a cervical strain and sprain as a result of the April 11, 2015 work incident, but that she was fully recovered. (*Id.* at 20, 23, R.R. 120a-21a.) Dr. Fayyazi testified that Claimant demonstrated a pre-existing degenerative condition of the lumbar spine in the June 2015 MRI study, but that there was no indication that she suffered a lumbar strain and sprain on April 11, 2015. (*Id.* at 21, R.R. 120a.) Dr. Fayyazi based his opinion that Claimant had not suffered a lumbar strain and sprain in large part on the fact that she did not report a lumbar strain and sprain after the injury and that no MRI of the lumbar spine was ordered until five months after the incident. (*Id.*) Dr. Fayyazi stated, however, that even if she did suffer a lumbar injury, she had recovered by the time of the IME, noting that his examination showed her range of motion to be almost as good as a teenager and that she had no pain or muscle spasms. (*Id.*) Dr. Fayyazi concurred with the accepted injuries of left ankle, right knee and bilateral hand contusions and he opined that she had fully recovered from these injuries. (*Id.* at 22, R.R. 121a.) Dr. Fayyazi concluded that Claimant was not required to be on work restrictions. (*Id.* at 23, R.R. 121a.)

In the decision, the WCJ found that Dr. Avart's testimony was competent but not as credible or persuasive as Dr. Fayyazi's testimony concerning the nature of Claimant's injury and his opinion that Claimant's disability ended on

7

or before October 26, 2015. (WCJ Decision F.F. ¶16.) The WCJ explained the credibility determination in favor of Dr. Fayyazi as follows:

> I find the testimony of Dr. Avart competent, but less credible than the competent, credible, and more persuasive testimony of Dr. Fayyazi. I have some concern that Dr. Avart continues to prescribe narcotic medication more than a year after a soft tissue injury. There is no diagnostic evidence of anything more than that. In fact, the possible cervical radiculopathy was ruled out by the EMG. Claimant has made no complaints of lumbar radiculopathy, so it is unlikely that an EMG, if performed, would reveal any such conditions. While Claimant's preexisting conditions became symptomatic, there were no anatomic changes as shown by several diagnostic studies. Aggravation requires a material change of condition; [Dr.] Avart conceded there was no physiologic change. Disabling exacerbation of symptoms is compensable, but only so long as the incident is the cause of those symptoms. Here, I find that Claimant's continuing complaints more than a year later are not related to the work incident but are due to her preexisting conditions advancing with age. In fact, Claimant's relatively benign examination by Dr. Fayyazi with only subjective complaints does not support a finding of continuing injury.

(*Id.*) The WCJ noted that the only exception to the finding that Dr. Fayyazi's opinion was entitled to more evidentiary weight than that of Dr. Avart related to the WCJ's conclusion that Claimant suffered a lumbar strain and sprain during the April 11, 2015 incident based on Claimant's credible report of symptoms in her lower back and the accepted description of the mechanism of the injury. (*Id.* F.F. ¶¶15, 16.) While the WCJ credited Claimant's description of her injury, the WCJ did not find credible her report that she continued to suffer from symptoms as a result of the soft tissue work injuries rather than her documented pre-existing cervical and lumbar spine degeneration. (*Id.* F.F. ¶15.)

8

Upon review, we reject Claimant's challenge to the WCJ's credibility determinations in favor of Employer's IME expert, Dr. Fayyazi. The WCJ offered a detailed discussion of the testimony of the two medical experts and clearly set forth reasons for accepting the opinion of Dr. Fayyazi over Dr. Avart's opinion, including the WCJ's concern over Dr. Avart prescribing narcotic pain medication after a soft tissue injury and the inconsistency between the diagnostic studies and examination results and Dr. Avart's diagnosis of Claimant's injury. *See Daniels*, 828 A.2d at 1053 (holding that where medical experts testify by deposition, a WCJ's resolution of conflicting evidence must set forth an actual objective basis for the credibility determinations rather than a mere statement that one expert is more credible than the other); *see also Dorsey*, 893 A.2d at 194-95. The WCJ's credibility determinations were supported by substantial evidence and were not arbitrary or capricious, and accordingly they may not be disturbed on appeal.

Claimant's request that we overturn the finding of greater credibility and persuasion in favor of Dr. Fayyazi in deference to the testimony of Claimant's treating doctor, Dr. Avart, relies on a misapprehension of our precedent. This Court has consistently held that greater credence may be given to the testimony of a claimant's treating physician as opposed to a physician who examines the claimant solely for litigation purposes. *Sloane v. Workers' Compensation Appeal Board (Children's Hospital of Philadelphia)*, 124 A.3d 778, 789 (Pa. Cmwlth. 2015); *D.P. "Herk" Zimmerman, Jr., Inc. v. Workmen's Compensation Appeal Board (Himes)*, 519 A.2d 1077, 1080 (Pa. Cmwlth. 1987). However, as this Court has also held, a WCJ is under no obligation to accept the opinion of the treating physician over the opinion of an IME expert retained by the employer. *Jenkins v. Workmen's Compensation Appeal Board (Woodville State Hospital)*, 677 A.2d 1288, 1293 (Pa. Cmwlth. 1996); *Ashe v. Workmen's Compensation Appeal Board (Department of*

9

*Labor & Industry)*, 648 A.2d 1306, 1307-08 (Pa. Cmwlth. 1994); *King v. Workmen's Compensation Appeal Board (Wendell H. Stone Co.)*, 572 A.2d 845, 846 (Pa. Cmwlth. 1990), *overruled on other grounds by Stonebraker v. Workmen's Compensation Appeal Board (Seven Springs Farm, Inc.)*, 641 A.2d 655 (Pa. Cmwlth. 1994) (*en banc*); *see also Mahaffey v. Workers' Compensation Appeal Board (3B Pain Management Center, PC)* (Pa. Cmwlth., No. 206 C.D. 2017, filed August 8, 2017), slip op. at 6-7 ("[I]t does not follow from [the principle that greater credence may be given to the claimant's treating physician rather than an IME expert] that because a medical expert may have examined a claimant and is offering testimony on behalf of a claimant that the medical expert's opinion is automatically entitled to greater weight than the opinion offered by an employer's expert.").[3]  This Court has specifically rejected the adoption of a "treating physician's rule" found in other jurisdictions that would give deference to the testimony of the treating physician based on the ongoing relationship between the physician and patient. *Jenkins*, 677 A.2d at 1293; *Ashe*, 648 A.2d at 1307-08; *see also Goodman v. Department of Public Welfare*, 695 A.2d 945, 949 (Pa. Cmwlth. 1997).  Thus, we may not disturb the WCJ's findings in favor of Dr. Fayyazi on the basis of Dr. Avart's more privileged relationship with Claimant as her treating physician.

Furthermore, Claimant's argument that Dr. Fayyazi's opinion should be rejected because a substantial portion of his practice was devoted to IME examinations and depositions, largely on behalf of employers, is not meritorious.  A perceived bias or interest in a matter is an appropriate basis for a WCJ to reject or discredit a medical expert's testimony, *Daniels*, 828 A.2d at 1053, and Claimant elicited testimony at Dr. Fayyazi's deposition that he conducts an average of 34

---

[3] *Mahaffey* is an unreported decision that is not binding precedent but instead is considered by the Court for its persuasive value.  210 Pa. Code § 69.414(a).

10

IMEs and 8 depositions per month, at a rate of $1,200 per IME and $3,000 per deposition, with 85 percent of the depositions on behalf of an employer or insurer and 15 percent on behalf of his patients. (Fayyazi Deposition at 7-8, R.R. 117a.) However, the issue of whether to account for Dr. Fayyazi's substantial IME caseload in the analysis of Dr. Fayyazi's credibility was for the WCJ alone to make. We may not superimpose our after-the-fact credibility determinations on the WCJ's decision.

Finally, Claimant challenges the competency of Dr. Fayyazi's opinion that Claimant had fully recovered from her work injury, which served as the basis for the WCJ's grant of the Termination Petition.[4] Claimant argues that Dr. Fayyazi testified that Claimant did not suffer a lumbar injury on April 11, 2015, which Claimant asserts is contrary to the medical evidence of a lumbar injury and the WCJ's finding that Claimant did suffer a lumbar strain and sprain. In workers' compensation matters, a medical expert's opinion is not competent to support a termination petition where the expert does not opine that the claimant has recovered from previously accepted or adjudicated work injuries. *Hall*, 3 A.3d at 740; *Gillyard*, 865 A.2d at 995. The expert's opinion is competent, however, where the medical expert doubts that the established injury occurred but nevertheless presumes the presence of the debated injury for the purpose of providing an opinion that the claimant had fully recovered from the injury. *Hall*, 3 A.3d at 741; *To v. Workers' Compensation Appeal Board (Insaco, Inc.)*, 819 A.2d 1222, 1225 (Pa. Cmwlth. 2003). While Dr. Fayyazi did testify that he did not believe that Claimant suffered a lumbar strain and sprain, Dr. Fayyazi stated that even if Claimant did suffer that injury, the fact that she had regained close-to-full range of motion and had no pain

---

[4] The issue of whether a medical expert's testimony is competent is a conclusion of law that is reviewable on appeal by this Court. *Pryor v. Workers' Compensation Appeal Board (Colin Service Systems)*, 923 A.2d 1197, 1203 (Pa. Cmwlth. 2006).

or spasms in the muscles of her lower back indicated to him that Claimant fully recovered from any lower back injury. (*Id*. at 20-21, R.R. 120a.) Dr. Fayyazi also did not ignore the work injury of left ankle, right knee and bilateral hand contusions that Employer accepted in the May 8, 2015 NCP and testified that Claimant had fully recovered from these injuries. (*Id*. at 22, R.R. 121a.) Dr. Fayyazi further opined that the medical records demonstrated that Claimant had clearly sustained a cervical strain and sprain during the April 11, 2015 incident but that Claimant had fully recovered by the time of his examination. (*Id*. at 20, 23, R.R. 120a, 121a.) Thus, the record demonstrates that Dr. Fayyazi fully accounted for the work injuries established at the time he offered his opinion and the additional injuries that were set forth in the September 26, 2016 WCJ decision under review.

Claimant further contends that the competency of Dr. Fayyazi's opinion was undermined by the fact that Dr. Fayyazi acknowledged that Claimant had fully recovered from her prior October 2014 neck and back work injury by March 2015 and that she was asymptomatic and capable of fulfilling her job duties prior to the April 11, 2015 work injury. Claimant asserts that it must logically follow that Claimant's current condition is the result of the April 11, 2015 incident and Dr. Fayyazi's opinion that Claimant's symptoms are related only to pre-existing degenerative disc disease is unsound. Claimant does not accurately characterize Dr. Fayyazi's testimony. Taken in its entirety, Dr. Fayyazi's testimony does not support the conclusion that Claimant was completely free of any problems with her lumbar and cervical spine prior to the April 11, 2015 injury. Instead, Dr. Fayyazi testified that Claimant was suffering from pre-existing multi-level cervical and lumbar spine degenerative disc disease consistent with a person of her age at the time of that work injury. (Fayyazi Deposition at 20-21, 24, R.R. 120a-21a.) While Dr. Fayyazi emphasized that he was not asked to opine on Claimant's condition prior to her

12

injury, he stated that his review of Claimant's medical records from an April 20, 2015 visit to her family doctor indicates that Claimant was actively treating for lower back pain at the time of the incident. (*Id*. at 30, 36-38, R.R. 123a-25a.) Dr. Fayyazi testified that Claimant's report to him that she was suffering from symptoms as of the date of the IME but was completely asymptomatic prior to April 11, 2015 was not supported by the medical records. (*Id*. at 36-40, R.R. 124a-25a.) Dr. Fayyazi opined that while Claimant did suffer an acute injury on April 11, 2015, his examination and review of the records showed no objective evidence of disability and that these injuries had resolved by the date of his examination on October 26, 2015. (*Id*. at 20-23, 35-36, 40, R.R. 120a-21a, 124a-25a.) Dr. Fayyazi's testimony, which the WCJ found to be credible and persuasive, was competent to support the WCJ's conclusion of full recovery and provided substantial evidence to support the grant of the Termination Petition.

Accordingly, the order of the Board is affirmed.

_____
**JAMES GARDNER COLINS, Senior Judge**


Judge Fizzano Cannon did not participate in the decision in this case.

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kathy Wall,                                     :
                                                :
                      Petitioner                :
                                                :
           v.                                   : No. 1573 C.D. 2017
                                                :
Workers' Compensation Appeal                    :
Board (Commonwealth of                          :
Pennsylvania),                                  :
                                                :
                      Respondent                :

# ORDER

AND NOW, this 31st day of May, 2018, the order of the Workers' Compensation Appeal Board in the above-captioned matter is AFFIRMED.

_____
**JAMES GARDNER COLINS, Senior Judge**